Rockingham,
March 4, 1930.

BURTON C. CASWELL *v.* MAPLEWOOD GARAGE.

*William H. Sleeper* and *John W. Perkins* (*Mr. Sleeper* orally), for the plaintiff.

*Ernest L. Guptill* and *Hughes & Burns* (*Mr. Burns* orally), for the defendants.

PEASLEE, C. J.   All the direct evidence in the case is to the effect that the driver of the car which is alleged to have been negligently operated was engaged upon business of his own, which had no connection whatever with that of the defendant partnership.   The plaintiff seeks to overcome this, and to sustain the ruling submitting his case to the jury because he introduced in evidence, subject to exception, certain statements made, or alleged to have been made, by the partners severally at different times after the accident.

As a part of his case, the plaintiff introduced the deposition of one partner, Badger, who died before the trial.   He answered affirmatively the questions: "You think it is fair to say that this was a partnership errand getting the parts because they were not in stock in the garage?" and "Are you willing for it to be considered that at the time he was your agent in making the trip for the partnership?"   Other parts of his deposition showed that he had no personal knowledge of any acts constituting the driver the firm's agent.

This was at the most an admission by one partner, not made in the course of a partnership transaction.   The plaintiff produced no other evidence on the subject before he rested.   As the case stood at the close of the plaintiff's evidence, there was no ground for finding the defendants responsible, and the motion for a nonsuit should have been granted.

But deficiencies in proof, or defects in evidence, may be supplied at a later stage of the trial, thereby obviating objections that were valid when made. The defendants did not stand upon the case as presented by the plaintiff, but produced evidence. After the defendants had rested, the plaintiff was allowed to be recalled to testify to a statement alleged to have been made to him by the other partner, Brown, which Brown thereafter denied. This statement as testified to was that "he felt that the partnership was responsible."

It may well be doubted whether these statements were sufficient in substance to take the case to the jury. The first answer made by Badger was nothing but an expression of an erroneous view of the law. The fact that a dealer did not have an article called for by a customer is not alone sufficient to prove that the customer's subsequent trip to Boston to procure the article was made as the dealer's agent. His second answer was that he was willing that a certain conclusion, based upon law and fact, should be taken to be true. The statement alleged to have been made by Brown was an expression of opinion, involving both law and fact.

It has been said that an admission that a claim is just "must be evidence of every fact necessary to establish the claim." *Nealley* v. *Greenough*, 25 N. H. 325, 331. It is evident that such general statements usually involve expressions of opinion as to the law. They attempt to state a legal conclusion. In a simple contract case (such as *Nealley* v. *Greenough, supra*), there may be no serious objection to attributing considerable probative value to them. But when, as in the present case, the ultimate issue is complex, it seems to be exceeding the bounds of reason to say that the plaintiff's whole case may be established by such inconclusive methods of proof.

"Conclusions of law unless inseparably blended with and necessary to the understanding of a statement of fact or statements as to the declarant's conclusion from certain facts, his 'opinion' as it is frequently called are not proper subjects for an admission, except in cases where the declarant might . . . have testified to the same inference or conclusion." 2 Chamb., Ev. s. 1293.

The weakness of such evidence has been pointed out in several cases. *Tuttle* v. *Dodge*, 80 N. H. 304, 310; *Tilton* v. *Daniels*, 79 N. H. 368, 370; *Baker* v. *Haskell*, 47 N. H. 479, 481.

But if it is assumed that a plaintiff can claim a right to the judgment of a jury upon such evidence alone, and that the defendants' only remedy is to seek to have the verdict set aside as against the evidence, the question whether these sayings of the individual partners were evidence against the firm is presented for consideration.

At the close of all the evidence the plaintiff had introduced the separate admission of each partner. Neither admission was made as a partnership transaction. No partnership business was being done at the time, and neither partner undertook to speak for the firm. Can a case against a partnership be proved in this way?

In order to reach a solution of the problem here presented it becomes necessary to ascertain the foundation for the rule that admissions by a party may be used in evidence against him, and to determine the nature of a partnership relation and the extent of the authority of each partner to speak for the firm.

There has been no little confusion of ideas as to why the sayings of one who is a party to a suit may be used as proof of his opponent's case. The topic is extensively discussed in 2 Wig., Ev. (1st *ed.*) *ss.* 1048, 1049; 30 Yale L. J. 355, and 2 Wig., Ev. (2d *ed.*) *ss.* 1048, 1049. The conclusion finally reached by these authorities seems to present the true solution of the matter. The ground is not that the utterance is against the interest of the speaker, for such a rule would allow the indiscriminate reception in evidence of the hearsay admissions of strangers to the suit. The real ground may be shortly stated to be that the law holds everyone responsible for what he says to the extent that his sayings may be used as evidence against himself of the truth of what he has said. 2 Chamb., Ev. *s.* 1292. "What a party himself admits to be true, may reasonably be presumed to be so." *Slatterie* v. *Pooley,* 6 M. & W. 664.

In order for extra judicial statements in the nature of admissions to be used as affirmative evidence, it must appear that they were those of a party. That is, there must be proof that the saying was that of a party himself or that the speaker was the party's agent, authorized to speak for him. The rule of evidence is that statements of a party as to facts material to the cause are evidence which may be introduced against him. In the case of speaking for another, the test for admissibility is not a part of the law of evidence, but of agency. The issue is one of authority, and is settled by the rules of substantive law upon that subject. 2 Wig., Ev. *s.* 1078.

The issue, how far the statements of one are evidence against another who was his partner, or against the firm, involves questions of the law of partnership rather than that of evidence. "A *partner* charges the partnership by virtue of an agency to act for it; how far his admissions are receivable depends therefore on the doctrines of Agency as applied to a partnership." 2 Wig., Ev. *s.* 1078, (3).

In general, it may fairly be said that the rule is that the power of

a partner to act for the firm extends only to the transaction of partnership business.

"In truth, 'the law as to partnership is undoubtedly a branch of the law of principal and agent; and it would tend to simplify and make more easy of solution the questions which arise on this subject, if this true principle were more constantly kept in view.' Lord Wensleydale, in *Cox* v. *Hickman*, 8 House of Lords Cases 268, . . . 'All questions between partners are no more than illustrations of the same questions as between principal and agent.' PARKE, B., in *Beckham* v. *Drake*, 9 M. & W. 79, p. 98 . . . The real and ultimate question in all cases like the present is one of agency." *Eastman* v. *Clark*, 53 N. H. 276, 289. See also *Doe*, J. to same effect *Ib.* 331, 332.

It is the accepted law everywhere that one partner is not the agent of the firm to admit the existence of the partnership. *Johnson* v. *Gallivan*, 52 N. H. 143, 145, and cases cited; 1 R. C. L. 514; 1 Rowley, Part. *s.* 466; Lind., Part. 112.

By a parity of reasoning the conclusion is reached that he is not such agent to admit that a transaction was a part of the firm's business. The rule was stated by Judge *Cooley* as follows: "A partner's declarations may bind his associates in partnership matters, but not in concerns foreign to the partnership; and he cannot by his mere admission or declaration bring a transaction within the scope of the business when upon the facts in proof it appears to have no connection." *Heffron* v. *Hanaford*, 40 Mich. 305, 307. Many other authorities sustain this proposition. *Taft* v. *Church*, 162 Mass. 527; *Mansfield* v. *Howell*, 218 Mo. App. 557; *Slipp* v. *Hartley*, 50 Minn. 118; *Thomas* v. *Harding*, 8 Greenl. 417.

Judged by this test, neither the admission made by Badger, nor the one alleged to have been made by Brown, would be evidence against the partnership. Neither was transacting or undertaking to transact partnership business. Each definitely declared that he spoke for himself.

But the claim is advanced that since there is evidence of admissions by every partner it can be found that there was one by the firm. In support of this view reliance is put upon the rule that while the admissions of one partner are not evidence to show the existence or extent of the partnership agreement, yet that agreement may be proved against the partners one at a time; and the admissions of each may be used against him. This is undoubtedly the rule as to proving a partnership. " . . . when a partnership is to be proved by the acts and declarations of those who are alleged to be partners, it

often becomes necessary to prove those of one person at a time. . . . Such testimony might clearly prove a partnership by the acts and declarations of each member of it, while each is bound only by his own acts and declarations." *Grafton Bank* v. *Moore*, 14 N. H. 142, 146. There are cases elsewhere to the same effect. *Nillson* v. *McDole*, 73 Wash. 312; *Jennings* v. *Estes*, 16 Me. 323.

These authorities are not applicable to the present situation. The issue of partnership existence involves individual action by the alleged partners. They act severally in creating the entity. It is the meeting of their minds which gives it existence. Without this individual action there would be no partnership. Until it has been created, there is neither firm nor partners. To establish it, the acts of the individuals, as individuals, not only may be, but must be, proved.

Nor would the admission of this method of proving that a stated transaction was within the scope of the partnership compact bring the underlying principle any nearer to the present case. The question: was a given transaction partnership business? is in reality an inquiry into what the partnership was. It involves the same elements as one as to the creation of the partnership. To make it partnership business the assent of the partners, as individuals, that it should be so is essential. *Dow* v. *Railroad*, 67 N. H. 1.

There is no such question in this case. The scope of the partnership is unquestioned. The plaintiff attempts to show that the firm sent the driver of the car upon a firm errand. The question is whether he was so sent. The sole issue is whether certain facts exist. If they do, the trip was partnership business. If they do not, the firm is not answerable. It is not a question whether certain acts bind the firm, but whether the acts were ever done. In this situation, a rule that the admissions of a partner, where his individual action is involved, are admissible as against him has no application.

The issue presented here is one of agency to act for and bind the firm. And this in turn involves the inquiry whether when a partner acts or speaks he does so as a principal and as agent of his partners, or rather as the agent of the firm. This question is suggested, but not directly answered, by *Doe*, J. in *Eastman* v. *Clark*, 53 N. H. 276, 291, 294, and again in *Dow* v. *Railroad*, 67 N. H. 1, 14.

It has frequently been said that when a partner acts for the firm he does so as principal and as agent for his partners. 20 R. C. L. 883; *Dow* v. *Railroad*, 67 N. H. 1, 13; Sto., Agency, *s*. 1. On the other hand, the idea that there is an entity for which the partners act as agent has been advanced and maintained by eminent authorities.

"That a partnership is an entity, distinct from the partners, is the view of the business world every-where. ... In our law, however, the partnership has not been clearly recognized as an entity. ... There is now, however, a strong disposition on the part of the courts to recognize the mercantile doctrine. ...

"The relation between the partners and the firm is that of agent to principal; and the firm property, the legal title to which is held by the partners, is in trust for the firm. Each partner, in doing an act which is within the scope of his agency, is acting therefore for the firm. It is ordinarily said that the partners are agents for each other; each partner when carrying on business being principal as to his own interest and agent as to the interests of his partners. A more exact conception of the transaction is however that already indicated: that each partner acts not as principal on his own account and also, in the same transaction, as agent for his copartners; but that he acts in the single capacity of agent for the partnership, and neither for himself nor for his copartners." Par., Part. (4th ed.) 2-4.

"The firm is the *contracting* party, not the individuals composing the firm; the credit is given to the *firm:* the partnership, the ideal person, formed by the union of interest, is the legal debtor. A partnership is considered in law as an artificial *person*, or *being*, distinct from the individuals composing it." *Hornblower*, C. J., *Curtis* v. *Hollingshead*, 2 Green (N. J. Law), 402, 410 (1834).

"Everybody knows that partnership is a sort of agency, but a very peculiar one. You cannot grasp the notion of agency properly speaking, unless you grasp the notion of the existence of the firm as a separate entity from the existence of the partners; a notion which was well grasped by the old Roman lawyers, and which was partly understood in the Courts of Equity before it was part of the whole law of the land, as it is now. But when you get that idea clearly, you will see at once what sort of agency it is. It is the one person acting on behalf of the firm. He does not act as agent, in the ordinary sense of the word, for the others so as to bind the others; he acts on behalf of the firm of which they are members; and as he binds the firm and acts on the part of the firm, he is properly treated as the agent of the firm. If you cannot grasp the notion of a separate entity for the firm, then you are reduced to this, that inasmuch as he acts partly for himself and partly for the others, to the extent that he acts for the others he must be an agent, and in that way you get him to be an agent for the other partners, but only in that way, because you insist upon ignoring the existence of the firm as a separate entity." *Jessel*, M. R., *Pooley* v. *Driver*, 5 Ch. Div. 458, 476.

"Where one joins a partnership, . . . he makes himself a part of an entity already existing, which has acquired certain property and business." *Brewer*, J., *Cross* v. *Bank*, 17 Kan. 336, 340.

"The partnership for most legal purposes is a distinct entity;— having its own property, capable of contracting separate debts, having the right to sue in equity its several members, and to be protected against their conduct to the same extent that it might be against the conduct of strangers." *Cooley*, J., *Robertson* v. *Corsett*, 39 Mich. 777, 784.

"The formation of a partnership, then, is the creation of a body, existent apart from the partners, for business purposes; for which the partners are to act, and not directly for each other." Pars., Part. (4th *ed.*) *s.* 46.

The distinction between partners and mere joint owners, or owners in common, illustrates this point. Common owners are not *per se* the representatives of each other and of the whole. There is no whole, no entity, in law. But in a partnership there is, to some extent, a legal entity. The share of a partner in the partnership property cannot be levied upon to pay his individual debt. *Garvin* v. *Paul*, 47 N. H. 158, 162, and cases cited. Upon the death of one partner the survivor takes the administration of the partnership estate as a trustee. *Cotton* v. *Stevens*, 79 N. H. 224. The interest of each partner is only in his share of the surplus. *Morrison* v. *Blodgett*, 8 N. H. 238.

There is then in a partnership something beyond a holding of property, or transacting business, in common. In some senses and for some purposes the individuality of the partners is merged in that of the firm. *Haggett* v. *Hurley*, 91 Me. 542; *Walker* v. *Wait*, 50 Vt. 668. Other illustrations of this entity are considered in 37 Harv. Law Rev., 793 (Jurisdiction over Partnerships); 28 Harv. Law Rev. 762 (The Uniform Partnership Act).

In view of the foregoing, it seems clearly wrong to assert that "the common law does not know the firm as an entity" (*Hughes* v. *Gross*, 166 Mass. 61). Still more fallacious is the idea sometimes advanced that the only legal entities are persons and those created by the sovereign (1 Law of Part., Bates, *s.* 171). It is everywhere admitted that the mercantile concept has always been of an entity. And as custom has grown to be law in other respects, it is not apparent why it could not be so adopted here. Even the opponents of the entity theory are obliged to admit its existence in some aspects of partnership law. " . . . there are certain parts of the law difficult to explain except upon the theory that a partnership is an entity."

*Ib. s.* 172. And Story points out that mere co-owners have "no community of interest in the entirety of the property . . . whereas, in partnership, there always is such a community of interest." Sto., Part., *s.* 410.

The logic of the matter, the long existing understanding of the business world whose interests are most vitally affected by the law upon the subject, and not a little of judicial and textbook authority, all declare the theory of legal entity to be the true conception of a partnership. It is not necessary to carry the idea to extremes. Its limitations will be defined as cases in point arise. It is sufficient for the decision of the case at bar to conclude that in the matter of the agency of a partner there is an entity for which he acts.

This conclusion is not in conflict with the decision under the bankruptcy act that a firm is not a bankrupt within the meaning of the act if it has a partner able to pay his own and the firm debts. *Francis* v. *McNeal*, 228 U. S. 695. That case does not deny the entity theory. "Since Cory on Accounts was made more famous by Lindley on Partnership, the notion that the firm is an entity distinct from its members has grown in popularity, and the notion has been confirmed by recent speculations as to the nature of corporations and the oneness of any somewhat permanently combined group without the aid of law. But the fact remains as true as ever that partnership debts are debts of the members of the firm." *Holmes*, J., *Ib.* 699. Personal liability may be an incident of the ownership of corporate shares, as well as of a partner's obligations. *Dow* v. *Railroad*, 67 N. H. 1, 9. No one would think that element negatived the idea of corporate entity.

Applying the theory of partnership entity, it is clear that the evidence introduced in this case was not proof against the firm. Since "the doctrines of Agency as applied to a partnership" (2 Wig., Ev. *s.* 1078 (3) ), show that the statements were not made in the execution of the agency, they were not evidence against the principal.

"Almost the whole law on this subject resolves itself into the rule, that the representations or misrepresentations of a partner are binding on the firm, provided they are made in the course of, and relate to, and are material to, the transaction of the business of the firm." Pars., Part. (4th *ed.*) *s.* 129.

That which is evidence against one partner, but not against the firm as a whole, cannot be admitted to prove the existence of facts not concerning the existence and extent of the compact between the partners. The ground for receiving admissions of a party in evidence

is not because the statement was against the interest of the speaker, but because one is accountable for his words. As the firm is not accountable for the unauthorized sayings of a partner, so they are not evidence against the firm.

There are cases in this state dealing with the subject of the admissibility of the admissions of a partner as evidence against the firm. There is none holding contrary to the views already expressed herein, although there are conflicting *dicta*. The subject is touched upon in several cases. In *Mann* v. *Locke*, 11 N. H. 246, the admission was made after dissolution. There is language in the opinion indicating that it was made in the course of negotiations for settling the firm affairs. The real point decided was that dissolution did not destroy power to act as partner. As stated in the opinion, the evidence was objected to because the statement was made after dissolution. The extent to which a partner in a going concern may commit the firm was not considered.

In *Pierce* v. *Wood*, 23 N. H. 519, the decision is well stated in the headnote. "The acts and sayings of one member of a firm, in the general partnership business, done or said within the scope of that business, will govern the firm, whether honestly, or dishonestly transacted." A single quotation from the opinion shows the correctness of the conclusion. "At the time the compromise was effected, the defendants were in partnership. The debts to be settled were partnership debts. The compromise was for the benefit of the firm. It was an act done by and for the firm, and the defendants were jointly interested in it. It was strictly partnership business." *Ib*. 532.

*Rich* v. *Flanders*, 39 N. H. 304, is concerned chiefly with the constitutionality of making a statute removing the disability of a party as a witness applicable to causes of action already accrued. There is in the opinion of *Sargent*, J. (*pp*. 338, 339) certain language and reasoning broad enough to sustain the claim that an admission by one partner, not in the course of partnership business, is evidence against the firm. But that opinion was not agreed to by a majority of the court. *Doe* and *Nesmith*, JJ. concurred therein, *Bell*, C. J. and *Bellows*, J. dissented, and *Fowler*, J. delivered an opinion concurring in the result, but not mentioning this feature of the case.

The rule that the admissions of one after dissolution are evidence against the firm (citing *Mann* v. *Locke*, 11 N. H. 246) was stated *passim* in *Fellows* v. *Wyman*, 33 N. H. 351, 356.

In none of these cases is there any discussion of the question considered here. In so far as they give countenance to the rule that an

admission by one partner, not in the course of partnership business, is evidence against the firm, they are overruled.

But even upon the assumption that the partner acts as principal and as agent when dealing with firm affairs, the objections to the proof are not overcome. That conclusion would not dispose of the question whether the several and unrelated acts of the partners can be treated as the equivalent for their joint act. Where the partner acts for all, there would be partnership action, even if it were true that in part the action was by the principal and in part by an agent. It is unified action. His agency gives him no power to take any several action. The joint authority is not severable.

It may fairly be said that, apart from partnership matters, one is not a partner. How then can his action, not taken in those matters, be said to be the act of a partner? And when he declares that he speaks for himself alone, how can it be considered that he is speaking for the firm, or for any part of the firm? Unless it be true that each in his character as a principal in the firm has some firm authority aside from the power to act or speak for the whole, what he says or does is not chargeable to the firm, either as a whole or as to a part of it. It cannot be said that a partner can act for himself alone, in partnership business. One cannot severally act jointly.

When it is said he acts as principal for himself, the inquiry arises, how is he a principal and to what extent. He is a principal in the partnership business because he and his partner have agreed that he shall be; and the extent of that character is limited by the scope of the partnership. Outside that scope he is merely an individual, and not a principal in the joint enterprise. As partner, his character is circumscribed by the partnership agreement. Outside that he is not a partner and cannot act as such. To declare that he acts as principal for himself and as agent of the others does not describe a situation where his powers of action are enlarged. His power to act as principal is as limited as his power to act as agent. It is bounded by "the partnership jurisdiction" (*Dow* v. *Railroad*, 67 N. H. 1, 14).

If he attempts to act for the firm outside its scope, neither he nor the firm is bound, though he may be liable like any assumed agent for his false representation of authority. In order for any action to bind the firm as a concession or admission it must be one applicable to the firm. It must be firm action.

The mistake has sometimes been made of concluding that because the existence and scope of a partnership can and must be proved as against the several partners as individuals, therefore the existence

of any fact material to the admittedly existing partnership may be proved in the same way. When it is said that "in order to sustain his case, he must connect each and every one by their own admissions or acknowledgments" (*Welsh* v. *Speakman*, 8 W. & S. 257, 260), the rule for proving a partnership is stated. It is a misconception of the nature of an admittedly existing partnership to require or allow such method of proving a claim against the firm. It fails to take account of the essential difference between proving creation and showing action by the thing created.

[The before stated theory of the ground for receiving admissions of a party in evidence being that one is reasonably held to assure the truth of what he says, it is essential to the use of such evidence that it be proved to be the saying of the party sought to be charged with responsibility for it.] There is in the independent utterance of a partner nothing for which the partnership is responsible. The suit being against the partnership, proof should be limited to evidence admissible against the partnership. It is clear that there is no such evidence here.

To say that because there is evidence against each of the parts therefore there is evidence against the whole, is but to beg the question. The issue is whether there is evidence against the parts. Because there is evidence against the individuals it does not follow that there is evidence against them in their partnership capacity. If that capacity is something inseparable from the firm as a whole, more must be shown than that something is chargeable to the individual.

A partnership is a joint affair. To charge it there must be joint action or words. These cannot be taken or said severally. Nor can one partner severally bind or commit his joint share in a partnership. If he sells, his vendee does not become a partner. *Morrison* v. *Blodgett*, 8 N. H. 238. If he lacks power to commit the whole, he has no authority to commit any part of it. In this sense at least a partnership is a legal entity.

There is peculiar occasion for the application of the theory that a partnership is a legal entity in the present case. The issue is not the ordinary one of whether a transaction was that of a firm or, on the other hand, that of an individual partner. If it was not a firm affair it was no concern of the defendants, or either of them, in any way. The issue was entirely one of partnership liability. Individual accountability was not involved.

If it were concluded that the issue here was well proved, the case would present the curious situation of proof against a firm without

any evidence which was admissible to charge the firm. That situation might arise in a case of mere joint liability, but a partnership is something beyond that. It is so far a legal entity that ordinarily it speaks through someone who is its agent. It may on rare occasions speak through the united voice of all the partners, as a corporation may speak through the action of its stockholders duly assembled. But that speaking, to be that of the partnership, must be a common voice. Disassociated sayings of the individual partners, neither of whom undertakes to speak for the firm, do not meet the requirement. When there is common speech, there is evidence of authority to speak for the firm. In individual speech there is no such evidence. Neither has agreed that one or both may speak for a part of the firm. If the separate speech of one is not evidence against the firm, it does not become so by proof of other unauthorized speech by the other partner.

Neither partner has undertaken to speak for the firm and neither has consented that the other may sever the firm unity and speak for a part of it. Unless a power to make such severance exists, the several admissions come to nothing, as against the firm. For the reasons before stated, we do not think there is such power.

One other piece of evidence is relied upon as proof that the automobile was being operated in the defendants' business. It bore number plates issued to the defendants under Public Laws, chapter 100, sections 36-43. Since the statute limits the use of vehicles operated under such registration (s. 43), it is argued that, as rightful conduct may be assumed, therefore the desired finding could be made.

Of the cases cited to sustain this proposition, *Theil* v. *Wolfe*, 77 Pa. Sup. 312, and the authority upon which it rests (*Haring* v. *Connell*, 244 Pa. St. 439) are plainly distinguishable from the present controversy. The statute there dealt with differs from ours. It prohibits the use "for any other purposes than testing or demonstrating the vehicle to a prospective purchaser, or in removing the same from place to place for the purpose of sale." *Haring* v. *Connell*, *supra*, 442. On the other hand, our statute permits use for the owner's "pleasure purposes" and for "service in connection with his motor vehicle business." *Ib. s.* 43.

The Pennsylvania cases are based upon the fact that the use permitted was exclusive. "There are any number of cases which hold that it is incumbent upon the plaintiff in a case arising out of the negligent operation of an automobile, to prove that the defendant was the owner of the car, and the driver or servant was engaged in his business at the time the negligent act was done. These cases all

refer to automobiles operated under a general license, and are clearly distinguishable from those where automobiles are operated under a special dealer's license which confines the use of the car solely to the owner's business for the purposes set forth in the license." *Theil* v. *Wolfe, supra*, 315.

As the use permitted here is not exclusive, there is no basis for the inference the plaintiff seeks to draw. Whether the so-called presumption of right conduct is something to be weighed as evidence, or whether it is to be treated as a mere "administrative assumption" (2 Chamberlayne, Ev. *c.* xvi), is a topic which need not be considered. Granting all that is claimed for the proposition in the plaintiff's behalf, it cannot avail him when the basis for drawing the inference is lacking.

The other authority relied upon (*Giblin* v. *Company*, 44 R. I. 371) is one of a group of cases adopting the rule that proof that a car involved in an accident bore general license plates issued to the defendant, or that it was owned by the defendant, is evidence that it was being operated in the defendant's behalf, and that consequently that issue must be submitted to the jury, even though all the testimony of witnesses is to the contrary. These cases fully support the plaintiff's contention; but we do not think that they should be followed.

As has frequently been pointed out by the Massachusetts court (*Trombley* v. *Company*, 206 Mass. 516; *Rosenberg* v. *Karas*, 259 Mass. 568, and cases cited; *Welch* v. *Company*, 262 Mass. 310), the wide range of legal use allowed under a private car permit makes any attempt to ascertain therefrom the particular use at a given time pure speculation. *Matulis* v. *Gans*, 107 Conn. 562.

Until the proposition was challenged in the present case, no one appears to have doubted that the rule followed in Massachusetts was the law in this jurisdiction. Nonsuits or verdicts for defendants have been ordered in many cases which should have gone to the jury if mere ownership or taking out an operating permit is sufficient evidence to take the case to the jury on the issue of control. From *Danforth* v. *Fisher*, 75 N. H. 111 to *Groatz* v. *Day*, 81 N. H. 417, and *Lafond* v. *Richardson*, decided this day, no mention is made of ownership as proof of responsibility in fact for what was done by a third party with the thing owned. The lack of probative value has been deemed to be so plain that nothing has been said about it.

In answer to this, other courts have urged that because the evidence is peculiarly within the control of the owner of the car the rule of law should be that it is his duty to produce it. But this argu-

ment does not meet the essential objection that there is in fact no sufficient probative value in the circumstance which those cases say is to be weighed by the jury.

There is of course some merit in the argument that the best inventible procedure calls for a disclosure by the defendant. And there might well enough be an "administrative assumption" (2 Chamb., Ev. c. xvi), that until he does disclose, the issue shall be taken against him. That process has been used here. *Spilene* v. *Company*, 79 N. H. 326, 328, and cases cited.

All this however is a mere rule as to procedure at the trial. It does not change the burden of proof, nor free the plaintiff from the rule that he cannot invoke the judgment of the jury unless there is some substantial evidence upon which to base the essential findings in his favor. It may be that for convenience the duty of producing evidence should be put upon the defendant; but when all the evidence has been produced, it must contain something tending to prove the plaintiff's case. "A procedural *rule* is not a thing of logic. It is one in the realm of legal requirement. It might, with equal reason, be contended that when different weights were added together the rule of arithmetic under which it was done should be regarded as contributing further weight to the total result." 2 Chamb., Ev. s. 1224.

The procedural duty sometimes put upon the defendant to disclose the transaction, is a very different proposition from the burden of the plaintiff to show that the transaction was of a certain kind. In his effort to sustain his burden, the plaintiff may have the benefit of the procedural rule requiring the defendant to disclose. This is not proof, but a method of getting proof. The penal feature of the administrative rule may excuse the plaintiff from producing proof if the defendant is in default under the rule. But when the defendant complies, he is no longer subject to any penalty. The rule to produce having been complied with, it is *functus officio*. The case has no further concern with it, and the original issues are still the ones on trial. The question: is there any evidence to sustain the plaintiff's claim? still persists. "The duty of going forward with the argument or the evidence" is "a duty wholly separable from that of finally establishing." Thayer, Prelim. Treatise on Ev. 386.

In the second edition of Wigmore, the specific question now under consideration is taken up. "Where damage is done by the tortious act of the driver of a vehicle, and the injured person sues the owner of the vehicle, who was not the driver, it is a necessary part of the plaintiff's case that the driver was an agent of the owner and was

acting at the time within the scope of his employment. May these two facts be presumed from the fact of ownership? The answer should be affirmative, if we consider the relative facility of proof as between the parties, the ordinary habits of owners of vehicles, and the wisdom of placing the risk of not obtaining evidence upon the person who owns a valuable and dangerous apparatus and therefore should take special precautions against its misuse by irresponsible persons. The reckless irresponsibility of motorists in general, their notorious selfishness in monopolizing the highway against pedestrians, and the prevalence of homicide by motorists who set no value on the lives of others in comparison with their own convenience,—all these modern facts demand that the present rule, and every other applicable rule, be employed to improve the standard of care obeyed by vehicle-owners." But thus far he finds the courts out of sympathy. "Nevertheless, Courts have taken opposite views; some Courts leaving upon the innocent pedestrian the entire burden of producing evidence; in general, the Courts are here apt to take an unpractical, inhumane, and overcautious attitude." 5 Wig., Ev. (2d *ed.*) *s.* 2510 *a.*

Even if we were to adopt the views thus advanced, it would not avail the present plaintiff. Notwithstanding the vigor of the language used, it does not convey the idea of a general responsibility for a dangerous instrumentality, under the theory of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330. It concedes that agency, and action within the scope of the agency, must be proved. The method of proof suggested is hardly more than the application of the procedural rule of duty to produce. As he himself says in the following section, "No presumption can *be* evidence; it is a rule about the duty of producing evidence." *Ib. s.* 2511.

That accords with the view held in this jurisdiction. "If the weight of a rule of law as evidence of a fact, or as counterbalancing the evidence of a fact, can be comprehended, there are objections to such a use of it. . . . A legal presumption is not evidence." *Lisbon* v. *Lyman,* 49 N. H. 553, 563. "The burden of going forward with proof is not a species of evidence for the consideration of the jury." *Wright* v. *Railroad,* 74 N. H. 128, 136; *State* v. *Kilcoyne,* 82 N. H. 432.

When so earnest and able an advocate is unable to espouse an idea, it is safe to say that it is not founded in reason. Even he does not contend for a duty of the defendant to produce evidence which shall certainly show liability. No one has thus far advocated the proposition that the defendant shall be penalized if he presumes to produce

evidence favorable to himself. And if, as happened in the instant case, the evidence when produced is all in favor of the defendant, without a shred tending to establish the plaintiff's claim, there is nothing to submit to the jury.

It is suggested that the jury need not believe the witnesses. That is true; but the only effect of such a result would be to leave the case without any dependable evidence upon the subject.

The basic difficulty with the rule contended for by the plaintiff and adopted in some jurisdictions is that it attempts to alleviate a modern situation by disregarding well established law. What is really aimed at is making the automobile owner liable, at the discretion of a jury, for the results of any use of the car permitted by him. This could be done, either by a limited adoption of the discarded doctrine of *Rylands* v. *Fletcher*, L. R. 3 H. L. 330, or by a legislative enactment (see N. Y. Laws 1924, c. 534). But any attempted approach to such liability through an assertion that a rule of law is evidence to be considered by the jury, or by permitting inferences to be drawn when logic is absent, would be contrary to the settled law, as it is here understood.

There is much force in Wigmore's suggestion that every applicable rule should be employed to aid the plaintiff in this difficult situation. It may be that the liberal provisions of our statute for taking depositions (P. L., cc. 336, 337) are adequate for such occasions. But in any event the idea ought not to be used as an excuse for abrogating the rule that the plaintiff must prove his case, including therein proof of the defendant's responsibility for the happening. When the plaintiff is given the benefit of the administrative assumption that the owner of the car should produce the evidence as to control, etc., he is fully protected. Any thing beyond that would be a change in the substance of existing law. Whether this ought to be made is a question for the legislature.

As all the available evidence was produced in this case, it is not necessary to decide whether the administrative assumption against the owner until he discloses the facts as to control should be adopted as a general rule of procedure. This decision goes upon the grounds that if such a right be conceded to the plaintiff he has nothing to complain of here, that such an assumption would not affect the status of the case when its mandate had been fulfilled by the production of the evidence, and that ownership or taking out an operating permit is not sufficient proof of control over or responsibility for the acts of a third party operating the car.

258

It follows from the foregoing considerations that there was no admissible evidence sufficient to charge the firm with responsibility for this accident.

*Judgment for the defendants.*

All concurred.