## HUDSON et al. v. ERNEST ALLEN MOTOR CO.

### No. 4877.

Court of Civil Appeals of Texas. Amarillo. March 28, 1938.

Rehearing Denied May 2, 1938.

Walter D. Nicholson, of Jacksboro, and J. Harold Craik and Houtchens & Houtchens, all of Fort Worth, for appellants.

Todd, Crowley & Thompson and Chester B. Collins, all of Fort Worth, for appellee.

FOLLEY, Justice.

This suit was instituted by the plaintiffs, Lillie Hudson and her two minor children, against the defendant, Ernest Allen Motor Company, a corporation, of Fort Worth, Tex., to recover damages for the death of J. K. Hudson, Jr., who was the husband of Lillie Hudson and the father of the other plaintiffs.

Hudson died as a result of injuries he received on the night of May 4, 1935, when hit by a demonstration automobile owned by the defendant and driven by W. C. Wilson, a salesman employee of the Ernest Allen Motor Company. Hudson was an employee of the Texas highway department. When hit by Wilson, he was engaged as a flagman in directing traffic at a point on the Fort Worth-Dallas highway between Fort Worth and Arlington. Part of the highway was submerged by water at the time of the collision. The collision occurred about 9:30 p. m. while Wilson was driving in an easterly direction from Fort Worth. At the time of the collision Wilson attempted to drive between two cars which were parked on the south side of the highway and hit Hudson, who was standing between the two cars, talking to the occupants of one of the cars.

At the conclusion of the evidence the trial court instructed the jury to return a verdict in favor of the defendant, which resulted in a judgment against plaintiffs, from which judgment this appeal is predicated.

From the briefs of the parties, it is agreed that the basis for the instructed verdict was that the court was of the opinion that the plaintiff had failed to establish by the proof that the driver of the defendant's automobile was acting within the scope of his employment at the time of the collision. Such question is the only issue on this appeal which is material to our disposition of this case.

It is undisputed that Wilson was driving the defendant's automobile at the time

of the collision. He had been employed by the defendant as a car salesman for about two years prior to May 4, 1935. His duties were to demonstrate and sell automobiles for the defendant. For such purpose the defendant furnished him a new automobile which he was privileged to drive around Fort Worth and Tarrant county. Wilson's working hours were from 8 a. m. until 6 p. m., but he was privileged to use the car for demonstration purposes and for his own pleasure and business after working hours.

Although the collision in question occurred about 9:30 p. m. on Saturday night, May 4, 1935, Wilson, in company with Jack London, a fellow employee, had made a previous trip to Arlington from Fort Worth late in the afternoon of the same day. Wilson, with London, left Fort Worth on the first trip about 6 p. m. for the purpose of driving to Arlington, east of Fort Worth about 20 miles, to get London's wife. Mrs. London was on her way from Dallas to Fort Worth, but had been stranded at Arlington on account of the high water. After leaving Fort Worth, Wilson and London stopped at the point which was later the scene of the collision. They arrived at this point, which was some 15 miles east of Fort Worth, about 6:30 p. m. At this time Polk Ivy, another employee of the state highway department, was directing traffic through the high water on the highway. The witness Ivy testified that Wilson asked him if he wanted to trade his old car, which was standing nearby, for a new Chevrolet. Ivy stated that he replied that he was not able to buy a new automobile at that time and was not interested. Wilson denied that he mentioned the car trade to Ivy, but stated he was only interested in getting through the high water on his way to Arlington.

Wilson and London drove on through the water and reached the Thannisch Chevrolet Company at Arlington about 7:30 p. m. to find that Mrs. London had theretofore left by another conveyance for Fort Worth. While in the Chevrolet Company at Arlington, Wilson, who was a single man, called by telephone the home of Miss Helen Hiett in Arlington. Miss Hiett was a young lady whom Wilson had met at the Governor's Inaugural Ball in Austin in 1933. Harold Wilshire, manager of the Chevrolet Company at Arlington, and Otto Grimmett, a former employee of such company, heard Wilson make the telephone call and Grimmett searched the telephone directory for Miss Hiett's telephone number. It developed that Miss Hiett was not at home at the time, but her mother, Mrs. Will G. Hiett, answered the telephone. This fact was verified by Mrs. Hiett. It was further verified by Wilshire and Grimmett from the trend of the conversation of Wilson over the telephone at the time. Wilson informed Mrs. Hiett who he was and that he had met her daughter under the circumstances in Austin as related. Mrs. Hiett informed Wilson, according to her testimony and that of Wilson, that her daughter, Helen, had gone to a picture show in Arlington, but would be home around 9:30 p. m. Wilson then informed Mrs. Hiett that he would call back later.

After this telephone conversation, Wilson and London returned to Fort Worth to London's home in Polytechnic. There Wilson left London about 9 p. m. Wilson stated that he thought Miss Hiett would probably be out of the show in Arlington at that time and it then became his purpose to return to Arlington to call her again for a "date." He traveled the same highway towards Arlington to the scene of the collision where he claimed he failed to see the cars parked at such point. At this time, about 9:30 p. m., the collision occurred in which Hudson was killed. After the collision, Wilson drove on towards Arlington where he was arrested and placed in jail. In a statement early the next morning to an assistant district attorney Wilson denied that he had been in the collision in question and further stated that he was on his way home when arrested. He later explained this apparent fabrication by stating that after his arrest he did not wish to involve the name of an innocent young lady in his escapade the night of May 4, 1935. In this connection the physical facts in the case refute conclusively the idea that he was going home. His home was in Fort Worth, and at the time of the collision and of his arrest he was going in the opposite direction.

The foregoing testimony is substantially all the evidence in the record bearing on the question as to whether or not Wilson was on an errand for his master at the time of the collision. Upon such evidence the plaintiffs maintain that they had established a prima facie case and that the issue should have been submitted to a jury. This contention is based upon the theory that having established that the servant

of the defendant was driving defendant's automobile at the time of the collision, a presumption arose that such servant was acting within the scope of his employment and in furtherance of the business of his master.

The rule of law upon which the plaintiffs rely was announced in the case of Studebaker Bros. Co. v. Kitts, Tex. Civ.App., 152 S.W. 464, 467, writ denied, as follows: "It is the contention of appellant that, in order to recover, the burden rested on appellee not only to show that the automobile was the property of appellant and being operated by his servant, but that he was at the time acting within the scope of his employment. No such onerous burden rested on appellee. When he proved the ownership of the car and that it was being negligently operated by a servant of appellant at the time of the accident, a prima facie case was established, and the burden was upon appellant to rebut it by proof that the servant was not acting within the scope of his employment. It would be an intolerable burden to require an injured person not only to prove his case, but to go further and meet any possible defense the owner of the vehicle might make, before he could recover."

The above rule has been followed many times by our courts. See Browne et al. v. Hanagriff, Tex.Civ.App., 270 S.W. 890, and authorities therein cited. However, upon a careful examination of the authorities on this subject, it is our opinion that the courts never intended to establish a rule that the burden of proof shifts from the plaintiff to the defendant upon such an issue so vital to a plaintiff's recovery. The effect of the rule goes no further than to establish a rule of procedure to be followed after the plaintiff has shown that the servant was operating the master's automobile at the time of the injury. Such fact being shown, a presumption arises in plaintiff's favor that the servant was upon a mission for the benefit of the master. In such a situation, it is rarely ever an exception that only the master knows and can reveal the real mission of his servant. The defendant is either called upon to disclose the true facts with reference to the servant's mission or suffer the consequences of the presumption in plaintiff's favor. Such presumption can be overcome and nullified by a clear and convincing explanation by the defendant. This whole subject has been completely covered in a

very able opinion by Judge Alexander of the Waco Court of Civil Appeals in the recent case of Houston News Co. v. Shavers, 64 S.W.2d 384, 386, in which a writ of error was refused by the Supreme Court. In the course of his opinion, Judge Alexander said:

"In order for the plaintiff to recover damages for the negligent acts of the defendants' servant, it was necessary, of course, for the plaintiff to establish that such servant at the time of the commission of such negligent acts was acting for and on behalf of the defendants as his master and within the scope of his employment, and not merely on a personal errand of his own. If, at the time of said collision, the driver of said truck had completed his day's labor for the news company and turned aside from the prosecution of his master's work to engage in an errand wholly his own, the news company was not responsible for any damages caused by his negligent acts. Galveston, H. & S. A. R. Co. v. Currie, 100 Tex. 136, 96 S.W. 1073, 10 L.R.A.(N.S.) 367. The evidence is wholly insufficient to establish that he was engaged in his master's business at the time of said collision. Evidence that the truck with which the injury was committed belonged to the news company and that it was being driven by one regularly in its employment, in the absence of evidence to the contrary, raised a presumption that such servant was engaged in the news company's business at the time of such collision. Studebaker Bros. Co. v. Kitts (Tex.Civ.App.) 152 S.W. 464. This, however, is a mere rule of procedure and the presumption vanishes when positive evidence to the contrary is introduced. The presumption grows out of the fact that not infrequently the evidence necessary to establish the character of the mission in which the servant was engaged is exclusively within the possession of the defendant. The effect of the rule is to 'smoke out' the defendant and to compel him to disclose the true facts within his knowledge. When, however, he discloses the true facts within his possession and such evidence is positive to the effect that the servant was not engaged in the master's business at the time of the injury, the presumption is nullified and the burden is then upon the plaintiff to produce other evidence or his cause fails. Bond v. St. Louis-San Francisco R. Co., 315 Mo. 987, 288 S.W. 777; Murphy v. Tumbrink (Mo. App.) 25 S.W.(2d) 133; Caswell v. Maple-

wood Garage, 84 N.H. 241, 149 A. 746, 73 A.L.R. 433. In this case the defendants made a clean and clear disclosure of all of the evidence apparently within their possession. All those who presumably would know the facts were introduced as witnesses. All of the evidence so introduced was positive to the effect that the servant at the time of the collision was engaged in a mission purely his own. The burden of proof was upon the plaintiff and she was not entitled to recover without producing some evidence tending to establish a state of facts under which the defendants would be liable. We think the evidence wholly insufficient to support the verdict of the jury and that the court should have given an instructed verdict for the defendants."

In the light of this authority, it is our opinion that the testimony in the instant case was not sufficient to raise an issue for the jury on the question of whether or not the servant was acting within the scope of his authority at the time of the collision. All the physical facts negative the idea that he was on any mission for the defendant. Wilson expressly denies that he was. His only duty was to sell automobiles. It is hardly conceivable that he would have been searching for a prospect at such an hour on a rainy Saturday night. The plaintiffs urge that the testimony tends to show that Wilson was returning to the point of the collision to see Polk Ivy in a further attempt to interest him in the purchase of an automobile. Such contention is not based upon any positive evidence to that effect, but merely upon an assumption from the testimony of Ivy as to the conversation between him and Wilson upon Wilson's first visit to the place which was later the scene of the tragedy. Giving Ivy's version of this occurrence its most liberal construction, it amounted to no more than a casual conversation at a most unusual time and place to have possessed any serious import. Furthermore, the testimony fails to show that Wilson had any reason to expect that Ivy would still be on duty at such point at the time of the collision. On the other hand, the testimony reveals that Ivy was in a café in the nearby town of Handley at such time.

We think Wilson was sufficiently corroborated in his testimony that his mission at the time in question was purely a personal adventure of his own. He is corroborated by Mrs. Will G. Hiett, a disinterested witness, who detailed the telephone conversation she had had with Wilson earlier in the evening. He was also corroborated by the testimony of Miss Helen Hiett that she had met him in Austin under the most pleasant circumstances, and, although she could not remember if she had invited him to call her when in Arlington, she admitted she might have done so. He is also corroborated by the testimony of Wilshire and Grimmett who overheard the telephone conversation in the garage at Arlington. These two witnesses got the impression that Wilson would call back later. It is not unreasonable that he meant he would call Miss Hiett that same night since he was interested in learning what time Miss Hiett would be at home.

Such evidence having been introduced by the defendant in explanation of the mission of Wilson, the procedural burden shifted back to the plaintiffs to produce other evidence to support their contention. This, the plaintiffs failed to do. As in the Shavers Case, supra, the defendant made a clean and clear disclosure of all the evidence apparently in its possession.

Ernest Allen, president of the defendant company, testified that no one from his company had sent Wilson on any mission at such time and Allen knew nothing of the whereabouts of Wilson until long after the collision. This explanation was very reasonable and convincing under the circumstances in this case. It was at least sufficient to completely destroy the presumption in plaintiffs' favor. Such presumption being removed, the plaintiffs were in the same position that they were when they announced ready for trial. There was no fact, circumstance, or presumption in the evidence to show that Wilson was upon any mission for the defendant at the time of the collision. Such being true, it is our opinion the directed verdict was proper. Texas News Co. v. Lake, Tex. Civ.App., 58 S.W.2d 1044; Van Cleave et al. v. Walker et al., Tex.Civ.App., 210 S.W. 767; Bishop v. Farm & Home Savings & Loan Ass'n, Tex.Civ.App., 75 S. W.2d 285; Southern Casualty Co. v. Ehlers, Tex.Civ.App., 14 S.W.2d 111; Smith v. A1 Parker Securities Co., Tex.Civ.App., 74 S.W.2d 687; Hill v. Staats, Tex.Civ.App., 187 S.W. 1039, on motion for rehearing, Tex.Civ.App., 189 S.W. 85, writ refused; Haden Co. v. Riggs, Tex.Civ.App., 84 S. W.2d 789, affirmed 127 Tex. 314, 94 S.W. 2d 152.

With such a disposition of the above assignment, all other matters in this appeal become immaterial.

The judgment is affirmed.