ELIZABETH WALKER
*vs.*
MERLE P. WEYMOUTH AND
A. J. WEYMOUTH, D/B/A
SUNSET LODGE ON GREEN LAKE

GEORGE A. WALKER
*vs.*
MERLE P. WEYMOUTH, ET AL.

(Two Cases)

Hancock.    Opinion, September 13, 1958.

*Milton Beverage,* for plaintiff

*Silsby & Silsby,*
*Herbert T. Silsby,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

SIDDALL, J. These cases were tried together before a jury. One case was instituted by Elizabeth Walker to recover damages for injuries suffered by her; the other by her husband to recover the expenses incident to his wife's injuries, and for loss of consortium. At the conclusion of the evidence counsel for the defendants in each case moved for a directed verdict. The motions were granted and verdicts were directed. The cases come before this court on plaintiffs' exceptions to the directed verdicts.

The writs charge that the plaintiffs were paid guests occupying a cabin owned and operated by the defendants d/b/a Sunset Lodge on Green Lake, and that the plaintiff, Elizabeth Walker, was injured by slipping or tripping over a hidden rock on the premises. We believe that a fair analysis of the allegations in the writs indicates that the plaintiffs claim the defendants were negligent in one or more of the following respects, viz.: (1) that the defendants allowed the grass in the area in which the injuries occurred to be uncut for a period of time so that said grass grew to a height to cover dangerous rocks lying on said grassed area; (2) that the defendants failed to keep loose rocks removed from the premises; (3) that the plaintiff, Elizabeth Walker, fell on a rock which the defendants allowed to remain in a grassed area and allowed the grass in said area to grow high enough to hide the rock.

The record fails to show that the defendant A. J. Weymouth owned or operated the property, had possession

thereof, or exercised any control whatever over the premises. Under these circumstances, we find that no liability can be imposed upon him.

We now consider the cases against the remaining defendant, Merle P. Weymouth.

The testimony bearing upon liability in the cases was brief and undisputed. No evidence was offered by the defendants. The evidence indicates that the plaintiffs on the 27th day of July, 1956, were paying guests at certain overnight or tourist cabins, so called, operated by the defendant Merle P. Weymouth. Said plaintiffs had been guests at these cabins at some period of time during each year for some 13 years. Elizabeth Walker had been to the ladies' room on the day of the accident and had started to walk toward her husband's car. She felt something under her foot and fell. The area where she fell was grassed and some of it was cut and some not cut. Some was long and some short. She fell at a point about 25 or 30 ft. in front of one of the cabins and approximately midway between the cabin and a driveway. The accident happened at about 1:30 o'clock in the afternoon, and the plaintiff, George A. Walker, who came to his wife's relief after the fall, noticed a stone "in between where her body was lying, right near her elbow." During the evening of the same day Mr. Walker in the presence of the defendant Merle P. Weymouth found at the place where Mrs. Walker fell a white colored and jagged stone about the size of a hen's egg or small tennis ball. Mr. Walker testified that the stone found was the one he saw after his wife's fall. He further testified that the area in which his wife was injured was more like a hayfield and that the grass had been cut by a machine which "slung all that stuff around like bales of hay." He also testified that "there was a lot of bunches of newly-mown hay," and that "it wasn't a grass patch like it is now, more of a hay patch before then." As a result of her fall, Elizabeth

Walker suffered painful injuries, including a dislocated elbow, a fracture of the radius at the elbow joint and other injuries.

The evidence viewed in a manner most favorable to the plaintiffs is sufficient to establish that the plaintiffs' legal status at the time of the injury to Elizabeth Walker was that of invitees as to that part of the premises of the defendant where Mrs. Walker's injuries occurred.

As the operator of overnight or tourist camps, the defendant's duty to the plaintiffs was the same as that of the owner of a business toward his patrons on the premises by invitation of such owner. The defendant was not an insurer of the safety of the plaintiffs. His duty was to use reasonable, ordinary, or due care to keep the premises upon which the plaintiffs were expressly or impliedly invited in a reasonably safe condition for their use. In the instant cases the issue is not whether the premises were reasonably safe, but rather whether the defendant failed to use reasonable, ordinary, or due care to keep the premises reasonably safe under the particular circumstances of the cases as disclosed by the evidence.

In the case of *Lander* v. *Sears, Roebuck & Co.*, 141 Me. 422, 424; 44 A. (2nd) 886, a case involving injuries sustained in a fall by a customer in the defendant's store, the law relating to the duties of the owner is well defined in the following language:

"The applicable law is established. It is stated with great clarity in an annotation covering more than 50 pages commencing at 100 A.L.R., 710, at page 711:

'The proprietor of a store or shop owes a duty to his invitees to exercise reasonable, ordinary, or due care to keep his premises reasonably safe for their use.'

This is consistent with the statement of the rule set forth in 38 Am. Jur. 754, Par. 96, and with many decided cases cited in the annotation aforesaid and in a footnote to that text. It has been declared the law in this jurisdiction. *Thornton v. Maine State Agricultural Society,* 97 Me., 108, 53 A., 979, 94 Am. St. Rep., 488; *Graffam v. Saco Grange Patrons of Husbandry,* 112 Me., 508, 92 A., 649, L.R.A., 1915 C632. A storekeeper is not held to insure his patrons against injury while on his premises. *S. S. Kresge Co. v. Fader,* 116 Oh. St. 718, 158 N.E., 174, 58 A.L.R., 132; *Bader v. Great Atlantic & Pacific Tea Co.,* 112 N.J.L., 241, 169 A., 687. The distinction between his duty and that of an insurer was well drawn by Mr. Justice Farrington in *Charpentier v. Great Atlantic & Pacific Tea Co.,* 130 Me., 423, 157 A., 238, when he said, in speaking of the duty of a railroad to its employees:

'It does not undertake to provide a reasonably safe place . . ., but it does undertake to use due care to do so, and that is the measure of its duty.' "

See also *Buck* v. *Maine Central Trans. Co.,* 151 Me. 280, 282; 118 A. (2nd) 330 (dictum); 65 C. J. S. 521; 162 A. L. R. 949.

The same rule of duty has been applied to cases involving invitees of the owner of premises other than storekeepers or shopkeepers.

"Plaintiff's status as an invitee on defendant's premises is not questioned. The defendant owed a duty to plaintiff to exercise due care to have its premises in a reasonably safe condition and to give warning of latent or concealed perils." *Temple v. Congress Sq. Garage, Inc.,* 145 Me., 274, 276; 75 A. 2d, 459. (invitee on premises of landlord)

"A duty such as the plaintiff contends was owed to the child here would arise only if she were on the sawdust pile by express or implied invitation of

defendant. *Patten v. Bartlett,* 111 Me. 409. The duty then would be to use reasonable, ordinary, or due care to keep the premises in a reasonably safe condition for her use. The owner would not in any event be held to insure the safety of the invitee while on his premises." *Lewis* v. *Mains,* 150 Me., 75, 76; 104 A. 2d, 432. (child of employee of defendant)

It perhaps should be noted that under some circumstances the owner of a business has the duty to warn an invitee of the unsafe condition of land which is known to the owner and not to the invitee. In the case of *Shaw* v. *Piel,* 139 Me. 57, 61; 27 A. (2nd) 137, in discussing this type of duty, the court says:

"The opinion in *Carleton v. Franconia Co.,* 99 Mass., 216, puts it thus:

'The owner or occupant of land is liable in damages to those coming to it, using due care, at his invitation or inducement, express or implied, on any business to be transacted with or permitted by him, for an injury occasioned by the unsafe condition of the land or of the access to it, which is known to him and not to them, and which he has negligently suffered to exist and has given them no notice of.'

This statement of principle is quoted with approval by our own Court in *Moore v. Stetson,* 96 Me., 197, 203, 52 A., 767."

See also *Temple* v. *Congress Sq. Garage, Inc., supra.*

Under the pleadings and proof in these cases, however, this issue is not involved.

The tourist camp business in this state is a product of the automobile age. It is well known that tourist camp enterprises vary from rough camps constructed on unimproved or wooded land to elaborate camps and camp sites. The grounds of some are allowed to remain in their natural

condition. In others, extensive and well-maintained grounds are available for the use of patrons. Some maintain well-kept lawn areas upon which, by the very nature of their up-keep, patrons are invited to travel. In others, grounds in various conditions of improvement are maintained for the use of patrons. The rules of due care are the same in all cases, but the proof required to establish a lack of due care varies with the circumstances of each case. In actions involving injuries to invitees, facts which might be sufficient evidence of negligence as to an injury happening in what obviously is a lawn area might not be sufficient evidence of negligence as to an injury occurring in an area obviously maintained as a hayfield, although both areas may have been within the permitted range of the invitation.

The record in the instant cases discloses very little concerning the nature, extent, or use of the grounds connected with the defendant's business, particularly with reference to the maintenance and use of the grounds where the fall occurred. The jury had before it no evidence upon which it could reasonably determine how long the rock had been on the premises, or whether the defendant knew or should have known of the existence of the rock on the premises at the time of the fall. Resolving the testimony in a manner most favorable to the plaintiffs, a jury might have found that the plaintiff, Elizabeth Walker, fell or slipped on a jagged rock of the size of a large hen's egg, which was covered by recently cut grass or hay. The evidence in the case viewed thus favorably would not, however, have justified a jury in finding that the defendant had not exercised "reasonable, ordinary, or due care to keep his premises reasonably safe" for the use of the plaintiffs.

The circumstances under which a motion for a directed verdict may or may not be granted have been enunciated many times by this court.

"The principle of law which controls the action of this Court, when exceptions are presented to test the propriety of a nonsuit or a directed verdict for the defendant in the Trial Court, is to determine only whether upon the evidence under proper rules of law 'the jury could properly have found for the plaintiff,' *Johnson et al. v. New York, New Haven and Hartford Railroad et al.*, 111 Me., 263, 88 A., 988; and in determining that issue, the evidence must be considered in that light which is most favorable to the plaintiff, *Shackford v. New England Tel and Tel Co.*, 112 Me., 204, 91 A., 931." *Barrett* v. *Greenall*, 139 Me., 75, 80; 27 A. 2d, 599.

Viewing the testimony in these cases in a light most favorable to the plaintiffs, a jury could not properly have found for the plaintiffs, and the action of the presiding justice in ordering directed verdicts was proper.

In view of the above conclusions, it will not be necessary to discuss the question of whether the plaintiff Elizabeth Walker was guilty of contributory negligence.

The entry in each case will be

*Exceptions overruled.*