**448**

Paul K. ASHEMORE

v.

Gary LITSINBERGER.

Supreme Judicial Court of Maine.

Nov. 10, 1970.

James H. Dineen, Kittery, Russell Mc-Guirk, Newmarket, N. H., for plaintiff.

Berman, Berman & Flaherty by David M. Cohen, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, MARDEN, WEATHERBEE and POMEROY, JJ.

MARDEN, Justice.

On appeal. Upon a complaint alleging negligence on the part of the defendant whereby the plaintiff suffered personal injury, the trial Court directed a verdict for the defendant and plaintiff appealed.

The record establishes the following facts:

Defendant operated a public refreshment stand known as "A & W Root Beer," the premises of which consist of a parking area surfaced with "gravel or washed rock" and a service building of one story and having a flat roof. The parking lot was hard based gravel surfaced with ½ to ¾ inches of crushed stone. Within six feet around the building, due to movement of traffic, the crushed stone had been "thrown in" so that its depth varied from ¾ inch to "probably four inches." Plaintiff was a friend of defendant and "frequently" visited the defendant socially at the stand. On "numerous" occasions he had helped the defendant in performing maintenance services such as an operator might perform on the premises. On the day in question (June 12, 1967) defendant was in the process of wiring a public address system from the serv-

ice house to the parking area and sometime before 9 o'clock in the evening plaintiff came to the premises. Plaintiff's subsequent participation in the installation of the public address system, which terminated by the accident about 11:15 p. m., arose either by plaintiff's inquiring if defendant wanted help, which defendant indicated that he did, or that defendant asked plaintiff to help him. Plaintiff testified "I believe that he asked me to help him."

Defendant testified:

"I actually don't know exactly how Paul got involved with it. I mean, like one friend would say to another, I am not sure if Paul said to me 'Do you want help,' or if I said, 'Give me a hand.'"

In the prosecution of the work defendant asked plaintiff to go up on the roof of the service building to run a wire, around what has been called a pylon attached to the service building, and downward into the office window to be attached to the amplifier. Defendant told plaintiff where a ladder could be found, which was in the vicinity of the reference pylon. Plaintiff has previously used the ladder three or four times to mount the roof and on at least one occasion used it at "approximately in the same vicinity that it was" on the night in question.

The building bore in that area two 150 watt flood lights "pointed out to cover a parking space there which is about 40 feet, and you have one up and one down." Plaintiff says that the area was "relatively dark". Defendant says the area was "within the field of either of those lights."

Plaintiff found the ladder, which was about ten feet long consisting of "2 x 4's" with 1" x 3" strips attached for rungs, and placed it against the building, at a point where the ladder was found, although he stated he could have ascended "at any point."

Plaintiff was asked:

"Q And will you tell us how you put it up? What did you do?

"A Well, I went around the pylon; picked up the ladder; set it against the roof; and then stepped onto the bottom to make sure it was secure, and proceeded up the ladder."

The ladder had a strip or cleat attached to its rear side near the top which defendant, in his use of the ladder, "hooked" (mounted) on the fascia board (drip edge) of the roof to improve its stability. Plaintiff did not notice this cleat and did not use it for the purpose intended.

As plaintiff ascended the ladder he testified:

"Q * * * Now this ladder that you put up against the building, Paul, tell us what happened as you went up the ladder?

"A Well, nothing happened as I was going up the ladder. But when I reached the top and stepping onto the building, the ladder what I would call racked and threw me to the ground.

"Q Now, would you describe where your hands were just prior to stepping toward the roof, Paul?

"A They were both on the top of the ladder.

"Q And what was the movement of your hands as the ladder racked, so-called? What happened to your hands?

"A Well, my hands went like this, so that with one foot on top of the building I was thrown.

"THE COURT: Let the record show his right hand, that he lowered his right hand below his left as he said he racked."

Plaintiff and ladder fell to the ground, plaintiff suffering an injury to his left arm.

Defendant is "not sure" whether he warned plaintiff of the loose stone in the area where the ladder was mounted. Plaintiff testified that after the accident defendant said "I should have told you about this loose gravel out there" and

defendant admits that he may have said this, and testified later in the trial that "most likely this is exactly what I said."

Inquiry as to observation of the spot where the feet of the ladder had rested brought response from defendant that:

"I don't remember any (holes), anything more than normal"

and in relating that after plaintiff's fall he had ascended to the roof by the ladder, placing it "just short of say a couple of inches of the two depressions where the ladder had previously been standing," he was asked:

"Q And would you describe those two impressions?

"A Well, I would say they were about, oh, the width of a footprint. And going from shallow to deep may be one inch deep"

and stated that they were of equal size and depth.

At the close of plaintiff's case and again at the close of all the evidence defendant moved for a directed verdict contending there was no evidence of breach of duty on the part of the defendant and the verdict for the defendant was directed.

The points of appeal claim error in the directed verdict, urging that plaintiff was a business invitee as distinguished from a social guest[1] and the defendant owed him a duty to warn of danger, of which he was or should have been aware.

To test the validity of the Superior Court's ruling "we take the evidence in the light most favorable to the plaintiff" Jamieson v. Lewiston-Gorham Raceways, Inc., Me., 261 A.2d 860 and, in this instance, assume, without finding, that plaintiff was a business invitee and thus measure the evidence by the highest duty on the part of the defendant which plaintiff could expect,—"a duty to have the premises free from hidden defects, which by the exercise of reasonable care could have been discovered and guarded against." See Franklin v. Maine Amusement Company, 133 Me. 203, 205, 175 A. 305.

■ Reviewing the issue in the light of the undisputed facts, plaintiff has established neither negligence on the part of the defendant nor his own freedom from sole causal fault.

Plaintiff was not a stranger to the premises. He had used the same ladder to gain access to the roof at approximately the same spot as used at the time in question and was so aware of the nature of the crushed rock footing that after setting the ladder against the roof he tested it for security. There was nothing hidden about the condition of the surface of the grounds. The cause for the ladder's "racking" as he expressed it,—which term is understood as meaning a shift from the vertical rather than wrenching out of shape, is speculative. Plaintiff's manner· of shifting his weight from the ladder in the process of mounting the roof is an equally plausible cause. There are no facts here to bring the case within the rulings of Low v. Grand Trunk Railway Company, 72 Me. 313, or *Franklin, supra*. More applicable is Walker v. Weymouth, 154 Me. 138, 145 A.2d 90.

■ The fact that, after plaintiff's fall, defendant acknowledged to him that he should have told him about "this loose gravel out there",—which statement was admitted without objection, represents an opinion or legal conclusion on the part of defendant. See 29 Am.Jur.2d, Evidence § 604, Caswell v. Maplewood Garage, 84 N.H. 241, 149 A. 746, [3] 749 (1930), and Major v. Grieg, 102 R.I. 379, 230 A.2d 846, [7] 854 (1967). Accepting the statement as an admission against defendant's inter-

1. Statute abolishing difference in duty to the two classes came by Chapter 366, P.L.1967, effective October 7, 1967.

est, it was premised upon a factual assumption that the loose gravel caused the fall. This causation was not established. A jury could not properly have found for the plaintiff. *Walker, supra,* 154 Me., at page 145, 145 A.2d 90.

Appeal denied.

