**Lawrence ISAACSON**

v.

**HUSSON COLLEGE.**

Supreme Judicial Court of Maine.

Nov. 14, 1972.

Paine, Cohen & Lynch, by William S. Cohen, Errol K. Paine, Peter M. Weatherbee, Bangor, for plaintiff.

Rudman, Rudman & Carter, by Gene Carter, Torrey A. Sylvester, Bangor, for defendant.

Before DUFRESNE, C. J., and WEBBER, POMEROY, WERNICK and ARCHIBALD, JJ.

DUFRESNE, Chief Justice.

Lawrence Isaacson was a resident student of the defendant College when, on February 27, 1969 at approximately 6:15 in the evening on his return from supper, he slipped on an icy patch and fell to the pavement in the campus walkway between Hart Hall where he roomed on campus and the dining commons provided by the College. He sustained personal injuries for

which he sought compensatory damages before a jury. The defendant rested its case without introducing any evidence and its motion for a directed verdict was granted. Rule 50(a), M.R.C.P. The appeal brings to this Court the propriety of the ruling below. The appeal is sustained.

The trial Court's underlying reasons for directing a verdict in favor of the defendant seem to be two-fold: (1) there was no duty under the law of Maine resting upon the defendant towards the plaintiff to remove a natural accumulation of ice and snow under any circumstances, and (2), even if there were such a duty, the plaintiff, by undertaking, in the face of the obvious hazard of lack of illumination, to walk the pathway in a shuffling manner though wearing ripple-sole shoes, manifested such an awareness of latent potential dangers due to weather conditions that, notwithstanding his exercise of all necessary precautions under the circumstances, he would be barred from recovery of any damages for his resultant injury, because his conduct, as a matter of law, constituted negligence proximately contributing to the accident and the plaintiff's share of accountability or fault for the mishap was equal to that of the defendant or greater than fifty percent, when considered in the light of a just and equitable apportionment of the share of responsibility between the parties. 14 M.R.S.A., § 156. We disagree on both scores.

■■ In our assessment of the correctness of the direction of a verdict at the close of all the evidence, we must indulge in favor of the party against whom the verdict was directed every legitimate inference which the evidence would reasonably support. Stated otherwise, a verdict should not have been ordered for the defendant in the instant case if, taking the most favorable view of the evidence, including every justifiable inference, different fair-minded persons may fairly draw different conclusions from the evidence. MacLean v. Jack, 1964, 160 Me. 93, 198 A.

2d 1; Aronson v. Perkins, 1967, Me., 233 A.2d 726; Moore v. Fenton, 1972, Me., 289 A.2d 698. A careful review of the record satisfies us that the evidence was such that a jury question was presented, 1) regarding the defendant's negligence, and 2) respecting the percentage of the plaintiff's fault, if any, in evaluating his share of responsibility for his injury. This is not a case where a verdict for the plaintiff could not be sustained under the law from the evidence as disclosed by this record.

In our opinion, the evidence is sufficient to warrant the following factual findings:

The plaintiff was the only person to testify at trial concerning his accidental fall on the defendant's campus walkway on February 27, 1969. A junior at Husson College at the time of his injury, Isaacson graduated from the defendant institution in May of the following year. He had been a student at the College for two years prior to the date of the accident. But the campus was a new location to which the College had relocated for the start of the 1968–1969 school year. Thus, Mr. Isaacson had resided in Hart Hall, one of the dormitories on campus, for approximately six months prior to his unfortunate fall.

A heavy snowstorm which brought about forty-two inches of snow to the area lasted from Monday, the twenty-fourth of February, to sometime in the afternoon of Wednesday, the twenty-sixth. Wednesday's classes had been cancelled. The plaintiff had observed the defendant's maintenance personnel clearing the snow from the streets and walks on campus and had himself used the particular pathway between Hart Hall and Carlisle Hall where the dining commons were located at noon and in the evening of Monday, Tuesday and Wednesday prior to the accident. On each occasion, including his Thursday noon travel for lunch, plaintiff observed the pathway plowed to the black top and generally bare, except for snow blown by the wind onto the surface over the high banks on each side of the way. He had not spot-

ted any ice or patch of ice on any of his previous trips to the dining commons either during the storm or afterwards, except after his fall.

On Thursday evening, the day following the end of the storm, Mr. Isaacson, in the company of three other students, left his room in Hart Hall at approximately 5:00 p. m. for the purpose of going to the dining commons for supper. This route which the plaintiff had been accustomed to take since his stay on the new campus was the most direct way. It started at Hart Hall sloping down some 150 feet, or more, to an apex, with the same distance sloping down from Carlisle Hall and the dining commons to that middle point. Walking on the right hand side of the pathway which was six or seven feet wide, he had not encountered any patch of ice or other difficulty from Monday to Thursday evening until his return from the commons at approximately 6:15 p. m. that evening, although on each of the trips for his evening meal there was no artificial illumination.

A jury could infer from his testimony that the lack of illumination prevented him from seeing the immediate surface of the pathway, but that, because of the banks of fresh snow on each side of the way, the general area and direction of the travel path were plainly visible to him. He testified that, after slipping and falling, while on the ground, he did see the patch of ice which he had not noticed prior to the occurrence and which extended some two feet toward the center of the pathway and was about three feet wide. He stated that there was light snow over the ice. Admittedly, the way was slippery and, because of the downward slope from Carlisle Hall to the apex in the pathway, he was shuffling along so as to maintain better footing underneath, notwithstanding the fact that he was wearing ripple-sole shoes.

Following his injury and while walking along the area from the apex to Hart Hall, he observed a crunching noise under foot and testified to the effect that the portion of the pathway from the apex to Hart Hall had been treated with some abrasive substance like rock salt. He admitted that he had not checked on any of the other possible routes to determine whether they were safer than the chosen one. On the evidentiary facts in this case, it was error to direct a verdict for the defendant.

■■ The corporate defendant, concededly an institution of learning, was answerable in damages for actionable negligence of its servants under the pleadings in the case. The general rule of substantive law is that corporations, like individuals, are liable for their torts. Under the catch-all provisions of Rule 8(c), M.R.C.P. requiring that a party set forth affirmatively

—"any other matter constituting an avoidance or affirmative defense"—

the corporate defendant would have had to plead affirmatively and prove its defense of charitable immunity if it sought to escape liability under that doctrine. The defense of charitable immunity, like that of governmental immunity, is an affirmative defense. Barnes v. Providence Sanitarium, 1921, Tex.Civ.App., 229 S.W. 588; Pikeville Methodist Hospital v. Donahoo, 1927, 221 Ky. 538, 299 S.W. 159; White v. Central Dispensary and Emergency Hospital, 1938, 69 App.D.C. 122, 99 F.2d 355, 119 A.L.R. 1002; Foust v. City of Durham, 1954, 239 N.C. 306, 79 S.E.2d 519.

■ In its pre-trial memorandum, the corporate defendant raised as issues the legal status of the plaintiff on campus, the nature of the duty owed by the defendant to him, whether it failed in its duty, and, if it did, whether its breach of duty was the proximate cause of plaintiff's injuries, claiming that the plaintiff was guilty of fault barring recovery of any damages. Allowing all legitimate inferences from the evidence in favor of the plaintiff, a jury would be justified in concluding that at the time of his accident the plaintiff was a tuition-paying student in good standing at-

tending the defendant College. The character of plaintiff's relationship with the corporate defendant at the time of the accident is the factor upon which rests the College's duty and legal liability toward the plaintiff. Isaacson had, shortly before the fall, taken his supper at the dining commons to which the College had invited him under its agreement with the students on campus. Plaintiff's relationship with the defendant, as a student attending the College, was more nearly that of a business visitor or invitee. Jay v. Walla Walla College, 1959, 53 Wash.2d 590, 335 P.2d 458; Eberle v. Benedictine Sisters of Mt. Angel, 1963, 235 Or. 496, 385 P.2d 765; Ferrell v. Hellems, 1966, Ky., 408 S.W.2d 459.

■ Husson College, as the owner and possessor of the campus grounds, owed the student plaintiff whose status was that of a business invitee the positive duty of exercising reasonable care to provide him with walkways which he was invited to use, or which he would be reasonably expected to use, which were reasonably safe for his use. Walker v. Weymouth, 1958, 154 Me. 138, 145 A.2d 90; Jamieson v. Lewiston-Gorham Raceways, Inc., 1970, Me., 261 A.2d 860; Orr v. First National Stores, Inc., 1971, Me., 280 A.2d 785. Even though the owner or occupier of land does not insure safety to business invitees, nevertheless he is under legal obligation to use ordinary care to ensure that the premises are reasonably safe for invitees in the light of the totality of the existing circumstances.

■ This is our first opportunity to pass upon the question of liability of an owner or occupier of land to a business invitee for injuries sustained through the natural accumulation of ice and snow. We have held that an owner or occupier of land has no duty to remove natural accumulations of ice and snow with reference to persons passing by the premises (Ouellette

v. Miller, 1936, 134 Me. 162, 183 A. 341), or in landlord-tenant relationship. Rosenberg v. Chapman National Bank, 1927, 126 Me. 403, 139 A. 82; Labreque v. Holmes, 1963, 159 Me. 122, 189 A.2d 380.[1] We decline to extend any such reasoning to the student-business-invitee and college-possessor-of-land situation. The mere fact that snow and ice conditions are prevalent during the course of our severe Maine winters is not in and of itself sufficient rationale for the insulation of the possessor of land from liability to his business invitees. Kremer v. Carr's Food Center, Inc., 1969, Alaska, 462 P.2d 747.

■ The plaintiff student, as a business invitee, had the right to rely to some extent upon the defendant's discharge of the duty owed to him that he would not be exposed in his use of the campus walkways to an unreasonable risk of harm. He was not bound to anticipate negligent conduct on the part of the defendant in the maintenance of the area ways, but had the right to assume that the premises were reasonably safe for his use. See, Jenkins v. Banks, 1952, 147 Me. 438, 87 A.2d 908. The plaintiff, however, cannot rely blindly on the presumption of the discharge of one's duty, but must at all times exercise ordinary care for his own safety. See, Shannon v. Dow, 1934, 133 Me. 235, 175 A. 766. Plaintiff was entitled to expect from the corporate defendant's employees the exercise of reasonable care in their activities affecting the condition of the campus ways and in their inspection of the same to discover their actual condition and any latent defects and, also, in taking such corrective measures or giving such warning as may be reasonably necessary for his protection. Restatement (Second) of Torts, Comment b to § 343.

■ We need not determine in the instant case what steps reasonable care would have required the corporate defend-

---

1. Notice must be taken that in both landlord-tenant cases, the decisions rest very heavily on the contributory negligence of the plaintiffs which was then a complete bar to recovery.

ant to take while the storm was in progress. This was not the freezing rain or sleetstorm during which, under the general rule, the invitor is not required to remove the freezing precipitation as it falls, but is only duty bound to take appropriate corrective action within a reasonable time after the storm has abated. See, Mattson v. St. Luke's Hospital of St. Paul, 1958, 252 Minn. 230, 89 N.W.2d 743, 71 A.L.R.2d 422. The evidence reveals that, except for the heavy blanket of snow with which the storm covered the area, the defendant was not substantially impeded in its maintenance of the pathways and area ways free and clear of snow. A jury could reasonably infer from the evidence that the patch of ice which caused the plaintiff to slip and fall was formed as a result of an accumulation of water from the daytime thawing of snow from the snow bank along the pathway, followed by freezing when the temperature dropped as the sun went down. The process of thawing and freezing snow and ice is so palpably an integral part of our Maine winters that owners or occupiers of land know, or as reasonably prudent persons should know, that, in the very sequence of inevitable phenomena, spills on ice are readily foreseeable if no reasonable steps be taken to inspect the area ways under their control or otherwise protect their business invitees from harm. Furthermore, the storm was over in the afternoon of the day before the accident.

▌ The plaintiff did testify that the pathway was generally slippery and that, for surer footing, he shuffled along in protecting himself against slipping upon the slippery walkway. Some courts hold that the owner or occupier of property has no greater duty to prevent injury than the invitee has to protect himself, when the danger involved is universally known and is equally apparent to each party, and do not allow recovery. See, Schleisman v. Dolezal, 1963, 254 Iowa 1114, 120 N.W.2d 398; Crenshaw v. Firestone Tire & Rubber Company, 1963, 72 N.M. 84, 380 P.2d 828; Standard Oil Company v. Manis, 1968, Ky.,

433 S.W.2d 856. The rationale underlying such doctrine (See, Sidle v. Humphrey, 1968, 13 Ohio St.2d 45, 233 N.E.2d 589) has been stated in manner as follows—

In Prosser, Law of Torts (3 Ed.1964), 403:

" * * * In the usual case, there is no obligation to protect the invitee against dangers which are known to him, or which are so obvious and apparent to him that he may reasonably be expected to discover them. Against such conditions it may normally be expected that the visitor will protect himself."

In 2 Harper & James, Law of Torts (1956), 1491:

"The knowledge of the condition removes the sting of unreasonableness from any danger that lies in it, and obviousness may be relied on to supply knowledge. Hence the obvious character of the condition is incompatible with negligence in maintaining it. If plaintiff happens to be hurt by the condition, he is barred from recovery by lack of defendant's negligence towards him, no matter how careful plaintiff himself may have been."

We decline to adopt such a doctrine which automatically relieves the owner or occupier of land from any duty of care to his business invitee by reason of the invitee's knowledge of the generally dangerous condition of the land.

Section 343 of the Restatement (Second) of Torts (1965) provides as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

. (c) fails to exercise reasonable care to protect them against the danger."

Section 343A(1) of the Restatement (Second) of Torts (1965) further states:

"(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added.)

■ Our views are well summarized in comment f of the Restatement under Section 343A as follows:

"There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances."

This more flexible rule is followed by such authorities as Morris v. Atlantic and Pacific Tea Company, 1956, 384 Pa. 464, 121 A.2d 135; King Soopers, Inc. v. Mitchell, 1959, 140 Colo. 119, 342 P.2d 1006; Peterson v. W. T. Rawleigh Company, 1966, 274 Minn. 495, 144 N.W.2d 555; Dawson v. Payless For Drugs, 1967, 248 Or. 334, 433 P.2d 1019; Rogers v. Tore, Ltd., 1969, 85 Nev. 548, 459 P.2d 214; Kremer v. Carr's Food Center, Inc., 1969, Alaska, 462 P.2d 747.

■ The discharge of the duty resting upon the owner or occupier of land to exercise reasonable care for the safety of his business invitees carries with it the necessary implication that the owner or occupier shall have reasonable notice of the need for, and a reasonable opportunity to take, corrective action for the safety of his invitees. The burden was upon the plaintiff to establish that the condition of which he complains and which exposed him to an unreasonable risk of harm was present for a time of sufficient duration prior to the accident to enable the reasonably prudent person to discover and remedy it. See, King Soopers, Inc. v. Mitchell, supra.

■ Direct evidence is not essential to the proof that an unreasonably dangerous condition existed so long as by the exercise of reasonable care it should have been discovered and remedied. The fact of notice of the unreasonably dangerous condition and the lapse of a reasonable opportunity to correct it may be proved by circumstantial evidence. Time limitations may vary with the circumstances of each case. See, Lehman v. Richfield Oil Corp., 1953, 121 Cal.App.2d 261, 263 P.2d 13.

The jury could have reasonably concluded from the evidence that the pathway between Hart Hall and the apex as testified to by the plaintiff had been treated for slipperiness with some chemical such as rock salt; that the existence of a dangerous icy condition in the immediate vicinity of the extension of the way to Carlisle Hall and the dining commons was a sufficient alert to the defendant's employees of lurking danger to the defendant's business invitees in their use of the way in order to reach the commons, especially under the circumstances of poor lighting conditions, to cause a reasonably prudent person to inspect the same for the whole distance; that such an inspection would have revealed the concealed peril to which the patch of ice involved in this case exposed the defendant's business invitees including the plaintiff; and that the defendant's employees had received such notice of potential unreasonable risk of harm in sufficient time to take appropriate remedial action as they had done in the case of the condition of the walk between Hart Hall and the apex. See, Lisa v. Yale University, 1937, 122 Conn. 646, 191 A. 346; Thornton v. First National Stores, Inc., 1960, 340 Mass. 222, 163 N.E.2d 264; Rogers v. Tore, Ltd., 1969, 85 Nev. 548, 459 P.2d 214.

The jury could properly find the defendant negligent in failing to remedy the dangerous concealed icy condition or warn the students in relation thereto in view of the poor light condition. Corkery v. Greenberg, 1962, 253 Iowa 846, 114 N.W.2d 327.

We are aware of the holding of this Court in Lander v. Sears, Roebuck & Company, 1945, 141 Me. 422, 44 A.2d 886, where a directed verdict for the defendant was sustained. The plaintiff business invitee in that case had fallen in the defendant's store by reason of the slipperiness of the store's floor caused by water tracked in by customers entering the premises. This Court there said that there was no evidence the defendant or its servants had knowledge of the slippery condition of the floor prior to the time of the plaintiff's

fall. It quoted from a California case to the effect that for all that appeared the plaintiff may have tracked into the store the very moisture which caused her to slip and fall. The Lander Court further pointed ed to the fact that there was no evidence of poor lighting such as justified recovery in Judson v. American Railway Express Co., 1922, 242 Mass. 269, 136 N.E. 103. The facts in the instant case are distinguishable and the Lander decision is not controlling.

The combination of the dangerous icy condition and poor lighting of the areaways which the defendant College invited its students to use, under the totality of the circumstances in the instant case, serves to permit recovery of damages at the hands of the jury for actionable negligence. See, Paepcke v. Sears, Roebuck & Co., 1953, 263 Wis. 290, 57 N.W.2d 352; Garofoli v. Salesianum School, Inc., 1965, Super.Ct. Del., 208 A.2d 308.

Our Court in Thompson v. Franckus, 1954, 150 Me. 196, 107 A.2d 485, noted an exception to the rule that exempts landlords from any obligation to light common passageways and varied it to allow recovery at least to persons rightfully on the premises and not tenants, if in combination with poor lighting the landlord permits some dangerous condition to exist, where the risk of harm is increased by the failure to light.

 Whether Husson College was guilty of actionable causal negligence in plaintiff's accidental fall was a question of fact for the jury to decide under all the existing circumstances. But the defendant asserts, as a bar to recovery as a matter of law, plaintiff's own negligence or fault in encountering an obvious danger. We note that the reference patch of ice was covered with light windblown snow and in the poorly lighted setting was not so obvious that the plaintiff should be charged with knowledge of its existence as a matter of law. Mere knowledge of an icy condition before passing over it does not establish

negligence on the part of a business invitee. The test is, whether the plaintiff, knowing of the icy condition, reasonably believed, or had a right to believe, that he could use the pathway safely by the exercise of reasonable care. Kremer v. Carr's Food Center, Inc., supra. The plaintiff had used this particular walk without incident during the storm and after it had ended, in the daytime and after dark, under similar circumstances. Even though the way was slippery, there was nothing there to admonish him that by the exercise of reasonable care he could not pass with safety. The plaintiff's action, in undertaking to traverse the slippery pathway, could not, as a matter of law, be deemed a course of conduct so obviously rash and fraught with danger that a reasonably prudent man would consider it foolhardy. See, Peterson v. W. T. Rawleigh Company, 1966, 274 Minn. 495, 144 N.W.2d 555; Morris v. Atlantic and Pacific Tea Company, 1956, 384 Pa. 464, 121 A.2d 135.

Although admitting there were other lanes of travel between Hart Hall and the dining commons, plaintiff testified that he had not checked them for safety. The burden was on the defendant to prove the availability of a safer route of travel. *Peterson,* supra.

Both the defendant's ultimate actionable negligence, if any, together with the subsidiary issues underlying the same, and the plaintiff's share of fault under our comparative negligence statute were all issues for jury determination and it was error to direct a verdict for the defendant under the factual posture of the evidence.

The entry will be

Appeal sustained.

WEATHERBEE, J., did not sit.

All Justices concurring.