Harold **BAKER**

v.

**MID MAINE MEDICAL CENTER, et al.**

Supreme Judicial Court of Maine.

Argued Sept. 3, 1985.

Decided Oct. 16, 1985.

Rudman & Winchell, Dawn M. Pelletier, (orally), Paul W. Chaiken, Paul H. Sighinolfi, Bangor, for plaintiff.

Campbell & Mumm, Joseph B. Campbell, (orally) Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Phillip E. Johnson, Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The plaintiff, Harold Baker, appeals from a verdict directed for the defendants by the Superior Court (Hancock County) at the conclusion of the plaintiff's case. He argues on appeal that the trial justice erred in determining that on the evidence presented a jury could not have rationally concluded that the defendants Mid Maine

Medical Center (MMMC) and Waterville Country Club (Waterville C.C.) negligently failed to take adequate precautions to prevent him from being struck by a golf ball at a golfing exhibition. We conclude that there was sufficient evidence of defendants' negligence to warrant submission of the case to the jury and therefore we vacate the judgment.

The evidence presented at trial may be summarized as follows: On June 24, 1981, the plaintiff, an experienced golfer, attended a golfing exhibition held at the Waterville C.C., that featured the well-known professional golfer, Tom Watson. MMMC sponsored the event as part of a fund raising drive and charged an admission fee. Approximately 2500 people attended. The program included a clinic in the morning followed by a nine-hole golfing exhibition in the afternoon. As part of the afternoon exhibition, Watson played nine holes of golf. On any one hole, four individuals paid money for the privilege of playing along with Watson. No one other than these individuals played on the golf course during the exhibition. The plaintiff followed the exhibition for the first two holes but skipped the third and fourth holes in order to rest. At the fifth hole, he watched Watson and the four individuals accompanying Watson hit their first shots from the tee. The plaintiff stood 250 to 300 yards from the tee and twenty-five to thirty feet back from the edge of the fairway. Watson's shot landed in the woods on the opposite side of the fairway. While the plaintiff watched Watson disappear into the woods in search of his golf ball, he heard someone shout "fore." Immediately thereafter, a golf ball struck him in the chest. The ball hit him directly at the point where an incision had been made several months earlier when the plaintiff had undergone heart surgery. As a result of the impact, the plaintiff suffered further injury.

Because he was interested primarily in watching what Watson did on the golf course, the plaintiff did not know when the golfers playing along with Watson intended to play their shots. Other spectators who attended the exhibition also stated that they did not pay attention to the accompanying golfers. As an experienced golfer, the plaintiff knew that if he saw a person ready to hit a golf ball, he would watch him for his own protection. However, no one warned him when golfers were about to play their shots. He contended that if he had been so warned, he would have had more time to avoid being struck by a ball travelling in his direction.

The Waterville C.C. had formed a committee responsible for crowd control at the exhibition. The committee arranged to have twenty-five marshals supervise the spectators. The marshals were instructed to inform spectators in the area of the possible flight of the ball when a golfer would be playing a shot. Although the marshals purportedly gave such warnings on the fifth hole, the plaintiff did not hear any warnings. Another spectator also recalled that no one gave warnings. At the close of the plaintiff's case, the trial justice directed a verdict against the plaintiff upon the defendants' motions made pursuant to Rule 50(a) of the Maine Rules of Civil Procedure.[1]

## I.

■ In reviewing a directed verdict, we consider the evidence, including every justifiable inference therefrom, in the light most favorable to the party against whom the verdict was directed. *Poirier v. Hayes,* 466 A.2d 1261, 1263 (Me.1983); *Seiders v. Testa,* 464 A.2d 933, 935 (Me.1983). If by any reasonable view of this evidence a jury verdict for the plaintiff could be sustained, the granting of a directed verdict is improper. *Packard v. Central Maine Power Co.,*

---

1. The plaintiff does not contest the directed verdict entered in favor of Richard Thompson, who allegedly hit the golf ball that struck the plaintiff. Because the plaintiff failed to present any evidence that Thompson hit the ball that struck the plaintiff, the trial justice granted Thompson's motion for a directed verdict.

477 A.2d 264, 267 (Me.1984); *Boetsch v. Rockland Jaycees*, 288 A.2d 102, 104 (Me. 1972). Based on our review of the record, we conclude there was sufficient evidence of the defendants' negligence to warrant submitting the issue to the jury.

■■■ The defendants do not dispute that the plaintiff was a business invitee.[2] The defendants were required therefore to use ordinary care to ensure that the premises were reasonably safe for the plaintiff, guarding him against all reasonably foreseeable dangers, in light of the totality of the circumstances. *Libby v. Perry*, 311 A.2d 527, 536 (Me.1973); *Isaacson v. Husson College*, 297 A.2d 98, 104–105 (Me. 1972). The standard of ordinary care is a variable one and whether the standard of care required in a given case has been met is ordinarily a question of fact for the jury. *Boetsch v. Rockland Jaycees*, 288 A.2d at 106. Specifically, as noted in *Isaacson*, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" *Isaacson v. Husson College*, 297 A.2d at 105 (emphasis in original) (quoting

Restatement (Second) of Torts § 343A(1) (1965)).[3]

Section 343A(1) is applicable in this case in determining the duty the defendants owed to the plaintiff. The game of golf presents a known hazard, balls, hit by golfers, that do not always travel in the intended direction, and which are capable of causing serious personal injury.

Spectators at golfing exhibitions are therefore clearly subjected to known risks, recognized here by the defendants in their provision of marshals to supervise and control those in attendance. The crucial issue then becomes whether the defendants had reason to expect harm to the plaintiff from this obvious risk in circumstances where the plaintiff's attention would be distracted from such risk causing him to forget, or fail to protect himself against it. The evidence here sufficiently generates for the jury's consideration the factual question whether the defendants should have reasonably foreseen that spectators at a golfing exhibition featuring a renowned professional golfer, would focus their attention on the celebrity with resulting inattention to the other golfers playing along with him. *Cf. Seiders v. Testa*, 464 A.2d at 935. If such inattentiveness was reasonably foreseeable, the jury must then determine

2. We refer to the plaintiff's status as business invitee in its descriptive sense, cognizant of our opinion in *Poulin v. Colby College*, 402 A.2d 846 (Me.1979) in which we abandoned the distinction between invitees and licensees and employed instead a unitary standard that imposes on a landowner a duty of reasonable care in all the circumstances to those lawfully on the premises.

3. The court in *Isaacson* quoted comment f of the Restatement (Second) of Torts § 343A (1965). *Isaacson v. Husson College*, 297 A.2d at 105. Comment f provides:

There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or

obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk. In such cases the fact that the danger is known, or is obvious, is important in determining whether the invitee is to be charged with contributory negligence, or assumption of risk. (See §§ 466 and 496D.) It is not, however, conclusive in determining the duty of the possessor, or whether he has acted reasonably under the circumstances.

whether the defendants' failure to warn that a player was about to attempt a shot exposed the plaintiff to an unreasonable risk of harm. *E.g., Poirier v. Hayes,* 466 A.2d at 1263–64; *Libby v. Perry,* 311 A.2d at 536; *Boetsch v. Rockland Jaycees,* 288 A.2d at 105. *See also Duffy v. Midlothian Country Club,* 92 Ill.App.3d 193, 198, 47 Ill.Dec. 786, 790, 415 N.E.2d 1099, 1103 (1980). If a failure to warn exposed the plaintiff to an unreasonable risk of harm, the jury must decide whether in fact a warning was given on the fifth hole of play. If it finds that no warning was given, the jury must also determine whether such failure proximately caused the plaintiff's injury.

■ *Boetsch v. Rockland Jaycees,* 288 A.2d at 104–106, illustrates the propriety of submitting to the jury the issue whether the defendants took reasonable precautions in light of the totality of the circumstances. In *Boetsch,* the defendant organized and conducted a snowmobile race. As a result of a malfunction, a riderless snowmobile unexpectedly accelerated out of control over an embankment. It struck the plaintiff who stood in an "off-limits" area. The court, sustaining an appeal from a directed verdict for the defendant at the close of the plaintiff's case, held that a question of fact existed whether the defendant had taken reasonable precautions to provide reasonably safe premises for the spectators, guarding them against all reasonably foreseeable dangers. *Id.* A similar question of fact exists here. Accordingly, we conclude that the trial justice erred in determining that there was insufficient evidence to warrant submission of the case to the jury.[4]

The defendants, recognizing the rule that a judgment will be affirmed on appeal if its ultimate conclusion is correct in law, *L. Ray Packing Co. v. Commercial Union Ins. Co.,* 469 A.2d 832, 834 (Me.1983), argue that the direction of verdicts in their favor is sustainable on other grounds.

■ MMMC asserts that because it did not have the right to supervise the crowd during the exhibition, it owed no duty to the plaintiff. The trial justice properly rejected this argument. MMMC contends that under the terms of its agreement with the Waterville C.C. for the use of the country club facilities, the Waterville C.C. retained the sole responsibility to control the crowd during the exhibition. MMMC, nevertheless, as sponsor of the event, planned the exhibition, controlled admissions, collected the admission price, retained whatever profit was derived therefrom, and had the right to use the golf course in order to invite the public to attend the event. Because it retained concomitant control over the event, MMMC is not relieved of its non-delegable responsibility to make the premises reasonably safe for its invitees, including its obligation to ensure that Waterville C.C. adequately supervised the crowd. *See Watford v. Evening Star Newspaper Co.,* 211 F.2d 31, 33 (D.C.Cir.1954) (concomitant control basis for imposing duty to protect invitees from foreseeable dangers); *See also Murray v. Eastern Maine Medical Center,* 447 A.2d 465, 466 (Me.1982); *Libby v. Perry,* 311 A.2d at 535–36; *Boetsch v. Rockland Jaycees,* 288 A.2d at 104–105; *Easler v. Dow-*

---

**4.** There is apparently only one case in which a court discussed what may support a negligence action against organizers and sponsors of golfing events. In *Duffy v. Midlothian Country Club,* 92 Ill.App.3d 193, 47 Ill.Dec. 786, 415 N.E.2d 1099 (1980), a golf ball struck the plaintiff while she stood at a concession stand located between two fairways during a golf tournament. An affidavit suggested that the concession stand was placed in an area where golf balls had frequently landed in the past. The court reversed summary judgments for both defendants, the country club and the sponsor of the event. The court held that the defendants owed the plaintiff a duty of due care, noting that whether the standard of care required in a given case has been exercised is ordinarily a question of fact for the jury. The court found that an issue of material fact existed whether the defendants fulfilled their duty to the plaintiff. *Id.* at 198–99, 47 Ill.Dec. at 790–91, 415 N.E.2d at 1103–104.

*nie Amusement Co.,* 125 Me. 334, 335–36, 133 A. 905, 905 (1926).[5]

▆ The defendants next argue that the absence of expert testimony precludes a finding of negligence. The trial justice suggested that the plaintiff should have introduced such testimony regarding reasonable crowd control measures at a golfing exhibition because such knowledge is not within the jury's common knowledge. It is unclear whether the trial justice required such testimony or merely recognized the possibility that negligence might have been established if expert testimony had been offered. *Cf. Rice v. Sebasticook Valley Hosp.,* 487 A.2d 639, 640–41 (Me. 1985). Expert testimony is not necessary "when the subject of inquiry is one which is plainly comprehensible by the jury and of such a nature that unskilled persons would be capable of forming correct conclusions respecting it without the opinion of experts." *Ginn v. Penobscot Co.,* 334 A.2d 874, 883 (Me.1975). The questions raised here are quite similar to those left by the court for jury determination in *Boetsch v. Rockland Jaycees,* 288 A.2d at 106. The jury was capable of determining without expert testimony whether the precautions taken by the defendants were reasonable in light of the totality of the circumstances.

▆ Next, both defendants argue that because there is no evidence identifying the person who hit the ball, the jury would have been required to speculate as to causation. *See Pratt v. Freese's, Inc.,* 438 A.2d 901, 904–905 (Me.1981). The plaintiff is no longer attempting to impose liability on one of the golfers who played along with Watson on the fifth hole.[6] The duty

owed to an invitee includes the exercise of reasonable care to prevent harm caused by third persons. *See Hawkins v. Maine and New Hampshire Theaters Co.,* 132 Me. 1, 4, 164 A. 628, 629 (1933); *Easler v. Downie Amusement Co.,* 125 Me. at 335–36, 133 A. at 905. *See also* Restatement (Second) of Torts § 344 (1965). The plaintiff submitted evidence that no other persons, other than the four individuals playing the fifth hole along with Watson, were playing the golf course at the time of the accident. When the accident occurred, the plaintiff was watching Watson disappear into the woods in search of his golf ball. Thus, a jury could have reasonably inferred that it is more probable than not that one of the non-celebrity golfers playing the fifth hole hit the ball that struck the plaintiff.

▆ Finally, the Waterville C.C. argues that the plaintiff assumed the risk, as a matter of law, by entering into a "contract" when he purchased a ticket to attend the exhibition. Although the plaintiff is an experienced golfer and appreciated the risks of a golfing exhibition, this contention is without merit. We discern no evidence of a contractual assumption of the risk or the existence of an employment relationship between the parties. *See Wilson v. Gordon,* 354 A.2d 398, 401 (Me.1976).

Accordingly, the entry is:

Judgment vacated.

Remanded to the Superior Court for proceedings consistent with the opinion herein.

All concurring.

**5.** MMMC's reliance upon *Vogel v. West Mountain Corp.,* 97 A.D.2d 46, 470 N.Y.S.2d 475 (1983) is misplaced. In *Vogel,* the plaintiff attempted to impose liability on a promoter of the event for injuries received in a skiing accident. The promoter had contributed racing bibs and banners bearing the promoter's logo. The court stated that whether a duty should be imposed depended on whether the sponsor "had sufficient control over the event to be in a position to prevent the negligence." *Id.* at 49, 470 N.Y. S.2d at 477. The court found that since the sponsor did not plan, control or organize the

event it could not be held liable as a mere sponsor. Applying the same analysis here, MMMC actively planned and organized the exhibition and also controlled the admissions. Therefore, following *Vogel,* MMMC was obligated to use ordinary care to ensure that the premises were reasonably safe for the plaintiff, guarding him against all reasonably foreseeable dangers in light of all the circumstances.

**6.** *See* note 1.