STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS.
CLERK'S OFFICE

Oct 24  8 05 AM '00

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-99-738

*NM - Cum - 10/24/2000*

CHRISTIAN ROTH,

Plaintiff

vs.

THE SHERWIN WILLIAMS
COMPANY,

Defendant

JUDGMENT

DONALD L. GARBRECHT
LAW LIBRARY

OCT 31 2000

A jury-waived trial on the plaintiff's complaint was held on 10/18/00[1]. The plaintiff appeared with counsel. The defendant was represented by counsel.

On 1/16/98, the plaintiff went to the defendant's store in Yarmouth to buy paint for his employer. The plaintiff was wearing work boots with tread on the bottom. It was a snowy day and there was snow on the sidewalk leading into the defendant's premises. As he entered the store, the plaintiff went to the left of a display case. He bought paint at the counter in the rear of the store and stood on the mat in front of the counter during the purchase. The plaintiff was anxious to get back to work. He picked up four gallons of paint and went toward the front door, again to the left of the display and, therefore, did not retrace his route upon entering. As he approached the front door, he slipped and fell. Both the plaintiff and the defendant's assistant manager agree that there was water on the floor in the area in which the plaintiff fell.

---

[1] The defendant's objection to the four letters in plaintiff's exhibit 6 is overruled. See File Dep. at 9-12. The plaintiff's objection to the Glass testimony at page 49, line 11, through page 50, line 5, is overruled. See Glass Dep. at 39-40.

The floor in the defendant's premises was tile. Unlike every other store in the mall where the defendant's store is located, there was no mat in front of the door at the defendant's store, although there was a mat placed in front of the side door to the store. The defendant's store manager, who agreed that he was a stickler for running a "clean, tight ship," had the floor cleaned every other week and kept it shining. He agreed that the floor could be slick when wet. It was the store manager's policy to keep a bucket and mop beside the front door during snowy or rainy days and to mop up water whenever it was observed on the floor.

On the day of the plaintiff's fall, the store manager was at a conference and not in the store. The only employee in the store was the assistant manager. He did not bring the bucket and mop out of the back room and place it by the door, as was the store manager's policy.

The store manager had purchased a mat with a Sherwin Williams logo that was used on occasion in front of the front door when the "big-wigs" visited. On occasion, that mat would remain placed in front of the door for a period of time. When the mat was taken up after rainy and snowy days, the mat was wet and would be hung out to dry in the back room. The store manager did not leave this mat out on a regular basis because he did not want "to ruin the mat."

The plaintiff was negligent in failing to take reasonable care for his own safety, which should have included seeing the water on which he fell. See Isaacson v. Husson College, 297 A.2d 98, 103 (Me. 1972). Because of the large windows and the shiny floor, however, it would be difficult to see water on this floor. For

2

example, in defendant's exhibit 11, it appears that the floor is wet beside the white buckets on the shelves. Accordingly, it would be difficult for the plaintiff to see an accumulation of water on this particular floor. See also Def.'s Exhibits 12-13, 16-18.

The defendant was negligent in failing to exercise reasonable care by failing to place a mat inside the store's front door. The defendant was aware of the foreseeable risk of water and snow being tracked into the store and was aware that this floor, especially as it was maintained by this manager, could be slippery when wet. The fact that the mat, used for "big-wigs,"was wet after use on rainy and snowy days should have alerted the defendant that the use of a mat would absorb water and snow as people entered the store. See Dumont v. Shaw's Supermarkets, Inc., 664 A.2d 846, 848 (Me. 1995). Further, to the extent that the water on this floor should have been obvious to the plaintiff, the defendant should have had reason to expect that the business invitees in the store were likely to be distracted. As with the plaintiff, 70% of the defendant's business involved contractors and others buying supplies for businesses. Such people are interested in getting in and out of the store and back to work. See Colvin v. A R Cable Services - ME, Inc., 1997 ME 163, ¶ 9, 697 A.2d 1289, 1291. The court concludes that the defendant's negligence exceeds the plaintiff's negligence. See 14 M.R.S.A. § 156 (1980).

Prior to the fall on 1/16/98, the plaintiff had experienced occasional back strain, particularly resulting from his employment as a carpenter and as a painter at Maine Cottage Furniture. These strains resolved and did not permanently affect the plaintiff's ability to do his work or enjoy his life. Johnson Dep. at 7-8.

3

On 1/16/98, the plaintiff slipped and fell and landed hard on his back and twisted. Since that time, the plaintiff has treated with Steven Johnson, M.D. and Peter File, D.O. He was also seen for an independent medical evaluation by Jane Glass, D.O.. He incurred medical bills totalling $8,255.10. Dr. File believed that after November, 1998, the plaintiff could have gained much more from an active exercise program than from continued osteopathic manipulative treatments. File Dep. at 64-65. The charges for those visits to Dr. File after November, 1998 total $1,125.00.

The plaintiff was out of work as a result of his fall for two weeks. His lost wages total $840.00. At the insistence of Maine Cottage Furniture's workers' compensation carrier, the plaintiff returned to his work at Maine Cottage Furniture to a light-duty job, created for the plaintiff. The plaintiff participated in physical therapy and continues stretching exercises and walking. Lifting, carrying objects, stooping, and other repetitive motions involving his back cause him increased pain. The plaintiff takes Celebrex for back pain on a daily basis.

Dr. Steven Johnson, a board certified internal medicine doctor, saw the plaintiff after his fall on 1/16/98 for low back contusion after the plaintiff had been to the emergency room on two occasions. The plaintiff gradually improved under Dr. Johnson's care. In February, 1998, the plaintiff aggravated the 1/16/98 work injury by moving furniture. Under Dr. Johnson's care, the plaintiff continued physical therapy and worked under restrictions.

An x-ray taken of the plaintiff's lumbar spine revealed "minor degenerative changes" and no fracture or dislocation. It was Dr. Johnson's testimony that the

4

minor degenerative changes were not the cause of the plaintiff's low back pain because, among other things, his pain was not spinal pain. Johnson Dep. at 15, 20-21, 27-28.

In July, 1998, the plaintiff began to see Dr. Peter File for osteopathic manipulation. At that time, the plaintiff was suffering intermittent back flare ups and was still under restrictions for work. Dr. File saw plaintiff from July, 1998 through May, 2000. Through that time his pain had never resolved. File Dep. at 15. Dr. File's diagnosis was somatic dysfunctions, which means tightness and restricted motion in the muscles and connective tissues of the body. File Dep. at 17-18. That diagnosis continued throughout Dr. File's treatment of the plaintiff. File Dep. at 20.

Dr. File believed that the plaintiff's condition would improve if he became involved in a more extensive exercise program than the stretching exercises he currently does. File Dep. at 22; Glass Dep. at 21. Dr. File was unable to estimate whether the plaintiff's back pain problem would resolve completely. File Dep. at 22. By November, 1998, Dr. File determined to see the plaintiff only on an as-needed basis with the hope that the plaintiff's stretching exercises would be the primary treatment. File Dep. at 24, 48-49, 63-64. It was Dr. File's opinion that the plaintiff's chronic pain condition due to his somatic dysfunctions is related to the injury of 1/16/98. File Dep. at 26-27. Dr. File also disagreed with Dr. Glass's conclusion that plaintiff's low back pain is due to degenerative changes. File Dep. at 36.

Dr. Jane Glass, D.O., is a board certified physiatrist. She saw the plaintiff in September, 1999. The plaintiff was referred for a second opinion by Hanover

Insurance Company. She saw the plaintiff for a total of one and one-half to two hours. She determined that the plaintiff presented with symptomatic degenerative joint disease and disc disease in his low back. Glass Dep. at 15. She also determined that the plaintiff's symptoms were not caused by his fall of 1/16/98 and that those symptoms resolved by September or October, 1998. Glass Dep. at 19-20. Dr. Glass did not obtain the medical records of Drs. Johnson or File and never discussed the plaintiff's diagnosis with either of those doctors. Glass Dep. at 25-26. She has no recollection of ever having seen the x-rays, the MRI films, and the bone scan films done on the plaintiff. Glass Dep. at 26.

The court accepts the testimony of Drs. Johnson and File. The plaintiff's current back problems, his medical expenses, and his lost wages were proximately caused by his fall at the defendant's store on 1/16/98. The court determines also that the plaintiff has failed to mitigate his damages by continuing to see Dr. File after November, 1998 as opposed to engaging in and continuing an active exercise program.

The plaintiff previously enjoyed hunting, fishing, hiking, and maintenance around his house, including cutting wood for heat. He is unable to do these activities as he had done them before the accident because of his back pain. Further, in spite of admirable treatment by his employer, the plaintiff fears that if for one reason or another, he loses his job at Maine Cottage Furniture, he would not be employable in his prior occupation of carpentry or in other fields involving movement he is unable to do because of his back pain.

6

The entry is

Judgment is entered in favor of the Plaintiff and against the Defendant on the Plaintiff's Complaint in the amount of $26,000.00 plus interest and costs.

Dated: October 23, 2000

Nancy Mills
Justice, Superior Court

CUM-CV-99-738

Date Filed __12-23-99__    CUMBERLAND   ·· }    Docket No. __CV 99-738__

County

Action _____PERSONAL INJURY_____

CHRISTIAN ROTH                              THE SHERWIN WILLIAMS COMPANY

DONALD L. GARRECHT
LAW LIBRARY
OCT 31 2009

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| STEPHEN C. WHITING ESQ  780-0681<br>75 PEARL ST., SUITE 207, PORTLAND ME 04101 | ELIZABETH OLIVER ESQ<br>PO BOX 9546<br>PORTLAND ME 04112 |

Date of
Entry

Received 12-23-99.