**Alice FERRELL, Appellant,**

v.

**Dorothy D. HELLEMS, Individually and t/d/b/a Hellems School of Beauty Culture, Appellee.**

Court of Appeals of Kentucky.

Sept. 23, 1966.

Rehearing Denied Dec. 16, 1966.

Benjamin Mazin, Louisville, for appellant.

J. Walter Clements, G. William Clements, Louisville, for appellee.

SCOTT REED, Special Commissioner.

In this suit for personal injuries the plaintiff appeals from the action of the trial court in directing a verdict in favor of the defendant at the conclusion of plaintiff's evidence.

This action was brought by the appellant against the appellee for injuries appellant claims to have sustained as a result of some Coca-Cola cases falling over and hurling bottles on the appellant, one of which broke and cut her foot. These Coca-Cola cases were located on premises controlled and used by the appellee for the operation of a school of beauty culture. At the time of the accident appellant had been a student in this school for a relatively short time.

Since the trial court directed a verdict at the conclusion of the evidence in chief for plaintiff, it is incumbent upon us to review this evidence to determine whether or not the plaintiff made out a prima facie case. In this determination, of course, we must view this evidence in the light most favorable to the plaintiff and give her the benefit of any legitimate inferences which may be drawn from the evidence she presented.

There is actually very little dispute as to what happened on the occasion in question and in our view such factual differences between the parties as were present are not relevant to a proper disposition of the question presented on appeal.

It is admitted that the defendant operated a beauty school on the premises where the

accident occurred and was in control of the management and operation of the place where the plaintiff sustained her injuries. It is further established that the plaintiff was a tuition-paying student at this beauty school at the time of her injuries and was in the category of an invitee. According to the plaintiff's evidence, which consisted of her own testimony together with a pretrial deposition of the defendant and the defendant's testimony at the trial as if on cross-examination, at about 9:30 A.M. on the day of the accident the delivery truck of a local soft drink retailer delivered cases of bottled drinks to the beauty school. As was usual, the truck driver stacked these wooden cases of drinks in a small stockroom immediately adjacent to a locker room, which latter place was used by the some 75 or 80 students enrolled in the school. Considerably later in the day, and at about 3:30 or 4:30 in the afternoon, the defendant sent the plaintiff to a restaurant for some ice. When the plaintiff returned, she found that the defendant was not in her office and was informed that the defendant wanted her in the back of the school. She went to the back of the school and there the defendant requested her to help carry in garbage cans from the outside. Plaintiff and the defendant carried in the garbage cans. After this was done, the defendant stated that they would fill the coke machine. This was a dispensing machine located a considerable distance from the stockroom and apparently was placed somewhere near the front of the school premises. According to the plaintiff, the defendant opened the stockroom and expressed dissatisfaction with the way the delivery truck driver had stacked the cases of drinks. The defendant then got some paper carrying cartons and filled them up with bottles of soft drink. She took some of these bottles from the floor and some of them out of the stacked cases. The defendant, of course, was in the stockroom for this purpose but the plaintiff stayed out in the locker room and did not enter the stockroom. According to the plaintiff, the defendant told her that they would put these bottles in the dispensing machine and then go back for more until they had filled up the dispensing machine. The plaintiff obeyed the defendant's request and took the soft drinks which the defendant had given her to the dispensing machine and placed these bottles in it. It seems that about this time the defendant was called to the telephone and left to answer the call. The plaintiff testified that in compliance with the defendant's request she then returned to the stockroom to secure additional bottles of soft drink for the purpose of filling up the dispensing machine, and when she opened the door of the stockroom to enter it the cases of soft drinks commenced falling, pouring bottles of soft drink over her so that her arms became overloaded in attempts to catch them as they fell and one of the bottles fell and broke, cutting her foot. The plaintiff testified that as she entered the stockroom the cases of soft drinks started rocking, that they were stacked unevenly. She said also that when the cases fell over they were shaking and uneven and that there were soft drinks missing out of the top cases. The defendant testified that the delivery man stacked the soft drink cases, and in reply to a question from the court further testified as follows:

THE COURT: "Was there any opportunity for anybody else to be back there?"

THE WITNESS: "No, sir; nobody would bother with them."

The trial court in directing a verdict in favor of the defendant stated that there was no definite or positive evidence of negligence on the part of defendant though it was apparent that the cases were stacked improperly. It was the viewpoint of the trial court that there was no indication that any of this improper stacking was done by the defendant or anyone employed by her or anyone with her authorization, from which it would follow logically that the negligence, if any, was on the soft drink people who delivered the drinks. The trial court,

with evident reluctance, sustained the defendant's motion for a directed verdict.

We have further considered the written opinion of the trial court which it entered upon overruling plaintiff's motion for a new trial. It is evident from this written opinion that the trial court was of the opinion that there had been a failure to show any evidence of negligence on the part of the defendant and that the doctrine of res ipsa loquitur did not apply because the evidence showed that the negligent stacking of the soft drink cases was actually done by the soft drink delivery man.

The parties to this appeal devote substantially all of their respective briefs to an argument concerning the applicability of the doctrine of res ipsa loquitur. The appellant claims that the doctrine applies and the appellee insists it does not. This appears to be a situation where the parties have overlooked the forest of firmly entrenched principles of tort law in their concern over the mystical tree called res ipsa loquitur.

We might describe this doctrine of res ipsa loquitur as the legal counterpart to that field of higher mathematics which is particularly plaguing to college students known as the theory of probabilities.

In the case of Bell & Koch, Inc., v. Stanley, Ky., 375 S.W.2d 696 (1964), we undertook to explain our viewpoint toward the procedural effect of this doctrine and described it as doing no more than recognizing the persuasive force of a particular kind of circumstantial evidence. In that opinion, we said that the characteristics of an event may constitute credible proof of a negligent act or omission, that is to say, from the event or occurrence itself one may reasonably infer the existence of a defect or the failure to observe a duty.

In the instant case, however, we are not relegated to applying the doctrine in its classic and traditional sense. In this case we have positive evidence of the existence of a defective, artificial condition, i. e., unevenly stacked soft drink cases of sufficient height to present a hazard upon their falling and discharging their bottles. We have the added element of a submissible case of negligence in the relationship between the parties. The plaintiff was for all practicable purposes in the category of a business visitor on premises controlled, managed and possessed by the defendant. We have the further undisputed element of either knowledge by the defendant of the artificial defective condition or reasonable opportunity to discover that condition, and we have also her positive testimony that no third party meddled with the cases after they had been stacked.

Plaintiff insists that her case should have been submitted to the jury because the defendant removed some bottles from the cases and thus committed an act of negligence. Defendant insists that no negligence on her part was shown because negligence on the part of the delivery man was shown and because it was further shown that other students in the school had an opportunity to go into the room and change the conditions through no fault of the defendant.

We are of the opinion that none of these contentions reaches the actual problem. In the case of Herring v. Great Atlantic & Pacific Tea Co., 253 F.2d 954 (6 Cir. 1958), relied upon by defendant, the opinion pointed out that there was no proof that the possessor of the premises had notice of the condition or in the exercise of ordinary care could have acquired knowledge of it. The opinion further pointed out that there was positive evidence by an eyewitness that the accident happened due to the fault of the plaintiff. These factors are not present in the instant case. The converse is true. There are defectively stacked cases with knowledge or opportunity for knowledge by the possessor of the premises.

The case of Hicks v. Fontaine Ferry Enterprises, Ky., 247 S.W.2d 493 (1952), relied on by defendant, is easily distinguishable in that no defect was shown in the

Hicks case while a defective condition is shown in the instant case.

The parties and the trial court appeared to be of the opinion that if the soft drink delivery man was negligent then that ended the matter. This, of course, is the real error in the case. We pointed out in Wright & Taylor, Inc. v. Smith, Ky., 315 S.W.2d 624 (1958), that the requirement that the instrumentality causing harm be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time of the accident. The Smith case, wherein we made that statement, was an instance of the classic res ipsa loquitur situation as it applied to a possessor of premises. As has been pointed out in the instant case, we need not infer that the defective condition existed. There is positive evidence of its existence.

■ In the case of Rojo, Inc. v. Drifmeyer, Ky., 357 S.W.2d 33 (1962), we held that the owner or occupant of premises owes a duty to an invitee to use ordinary care to have the premises in a reasonably safe condition. We further held that when an unsafe condition of the premises is caused by a third person, the plaintiff must show that the defendant property owner knew, or with reasonable care could have known, of the unsafe condition in time to prevent the mishap. This view of the law which we took in that case is sustained by the Restatement of Torts 2d, § 344. Thus the fact that the delivery truck driver negligently stacked the cases did not relieve the defendant of her duty to exercise reasonable care as the possessor of these premises toward business visitors on them, particularly at a time when the artificial condition, although created by a third party, was under her control and management and she had knowledge or reasonable opportunity to discover the defective condition. As stated in Harper and James, The Law of Torts, Vol. 2, § 19.7, p. 1087:

"And even where the person in control of the instrument at the time of injury is sued, the possibility that some predecessor in control or some intermeddler caused the defect may still exist, though it may not be strong enough to destroy the needed inference and in any event it will not help a defendant who had a duty to inspect if the defect was probably discoverable and existed long enough to be found."

■ The rule applicable to the instant case is contained in the case of City of Madisonville v. Poole, Ky., 249 S.W.2d 133 (1952), wherein it was said that the owner or possessor of property owes an invitee or business visitor the active, positive duty of keeping those parts of the premises to which the invitee or visitor is invited, or may reasonably be expected to use, in a condition reasonably safe for use in a manner consistent with the purpose of the invitation. If the possessor knows or by the exercise of ordinary care or reasonable diligence could discover a natural or artificial condition which, if known, he should realize involves an unreasonable risk to the invitee or business visitor and does not remedy the condition or serve fair warning of peril, the possessor is negligent. The statement of the rule itself illustrates that the cases relied on by appellee are distinguishable in that they do not present business visitor situations, or they present situations in which a defective condition was not present or in which there was no reasonable opportunity for the party charged with liability to know or discover the peril in time to remedy it or to give adequate warning.

It is our conclusion that the plaintiff's evidence met the requirements under the rule herein stated and was a sufficient prima facie showing of negligence on the part of the defendant to withstand a motion for directed verdict made on behalf of defendant at the conclusion of the plaintiff's testimony. This is the only question presented for our disposition. Therefore, we confine ourselves to holding that the defendant's motion for a directed verdict at

the conclusion of the plaintiff's evidence should have been overruled and that the trial court erred in sustaining the motion.

The judgment is reversed and the cause remanded for further proceedings.