**Marjorie HEINRICH, Plaintiff–Appellant,**

v.

**KROGER CO., Defendant–Appellee.**

**No. 99–6644.**

United States Court of Appeals, Sixth Circuit.

Jan. 16, 2001.

---

Before KRUPANSKY, BATCHELDER, and GILMAN, Circuit Judges.

## OPINION

GILMAN, Circuit Judge.

Marjorie Heinrich, who slipped and fell in a Kroger grocery store, sued the company to recover for her injuries. Kroger filed a motion for summary judgment, which the district court granted. Heinrich now challenges that ruling. For the reasons set forth below, we AFFIRM the judgment of the district court.

## I. BACKGROUND

### A. Factual background

On October 20, 1997, at approximately 8:45 a.m., Marjorie Heinrich entered the Alexandria Drive location of the Kroger store in Lexington, Kentucky. Heinrich was 74 years old at the time. She had gone there to purchase a few bananas.

The layout of this particular Kroger is typical of most modern grocery stores. There is a large, well-traveled aisle around the perimeter of the store. This perimeter aisle surrounds approximately fourteen inner aisles in the middle of the store. The produce section is located at the rear of the store on the right-hand side, and the checkout stands are in the front.

Within five minutes of entering the store, Heinrich headed to the produce display at the back of the store, selected a bunch of bananas, and began walking toward the cashier. Before she exited the perimeter aisle on her way to the cashier, Heinrich stepped on a grape that had fallen to the floor. Heinrich slipped on the

grape, lost her balance, and fell. Although she never actually saw the grape before or after the fall, she knows that this was the cause of the accident from the statements of others who came to her aid.

Joyce Oliver, a Kroger cashier who had been stationed at the front of the store, happened to look down one of the inner aisles at the very moment that Heinrich lost her balance. After Oliver saw Heinrich collapse, the cashier instructed one of her co-workers to go help Heinrich, and immediately paged a manager. At least two managers and several employees went to assist the fallen customer. Once they determined that Heinrich was unable to walk due to the excruciating pain in her right knee, they called her husband and an ambulance. Heinrich has since incurred approximately $28,000 in medical expenses, largely due to surgery on her knee as a result of the fall.

Kroger's Alexandria Drive location has a comprehensive policy with respect to floor cleanliness. First, a store directive states that the floor is to be cleaned hourly. Heinrich emphasizes the fact that Kroger "did not enforce their own floor cleaning policy," based on the deposition testimony of an employee who said that on busy days the cleaning might not be performed every hour. There was no other evidence that indicates the interval between cleanings under this relaxed application of the floor-cleaning policy. Nevertheless, this same employee also stated in his deposition that, on the day of Heinrich's accident, the floor had been cleaned within two hours of the slip and fall.

This system of regular cleaning is supplemented by a policy of making each employee responsible for keeping the floor free of debris and other dangerous material. Every Kroger employee deposed in this case verified the company's requirement of personal responsibility for the maintenance of a clean floor. All of the employees stated that it was their job to pick up floor debris or to notify other staff members if a larger cleanup was needed.

Store managers possess ultimate responsibility for floor upkeep. Each manager makes hourly inspections of every aisle to ensure that there is nothing on the floor. They either pick up what they find or bring any larger mess to the attention of another employee. It is common during the day for more than one manager to be on duty. Thus, these visual sweeps often occur more than once per hour.

Prior to Heinrich's fall, there were 3 managers and approximately 50 other employees on duty at the Alexandria Drive Kroger. The last floor cleaning had been completed between 7:00 a.m. and 7:30 a.m., less than two hours before Heinrich's accident. An employee, Omer Vickers, was in the process of sweeping the floors when the accident occurred, but had not yet reached the spot where the grape had fallen. Two minutes before the accident, Breck Veatch, one of the store managers, had performed a visual sweep of the immediate area where Heinrich slipped. Upon inspecting this area, Veatch discovered and picked up two fifty-cent coupons that had fallen to the floor. He stated that he was sure that the grape was not on the floor when he inspected the area. Another manager on duty, Cary Owsley, testified that the area where Heinrich fell would have been inspected by him personally at least twice between 7:00 a.m. and 10:00 a.m. Two other Kroger employees, Robert Lee, a carpenter, and Tony Colvin, an electrician, were near the scene of the accident when it occurred.

How many customers were in the store at the time of the accident is unclear. Owsley testified that there were approximately twenty patrons in the store. Others have said they do not remember. No one can recall whether or not there were

any customers in the area of the accident when it occurred. Heinrich's brief asserts that there were no customers in the area of the accident after Breck Veatch performed his inspection, but there is no proof in the record to support this claim. Joyce Oliver, the cashier, simply said that she could not remember seeing any other customers in the immediate vicinity when she looked down the aisle at the moment Heinrich fell. When asked under oath if she recalled seeing any customers in the vicinity of the accident within fifteen minutes of Heinrich's fall, Oliver was unable to say.

Finally, Heinrich alleged that a change in the bags used to hold the grapes might have been the source of the errant grape on the floor. On prior visits to the store, Heinrich noted that the grapes had been stored in "sealed" bags. At some point Kroger changed the type of storage bags, and began using containers with openings in the plastic. It is not clear from the evidence that the change in the bags created any increase in the number of grapes falling to the floor, or that the new bags were the cause of the offending grape's presence on the floor. There is also no evidence pointing to which kind of bag was in use at the time of the accident.

### B. Procedural background

On October 6, 1998, Heinrich filed suit against Kroger in state court. Kroger removed the case to the United States District Court for the Eastern District of Kentucky. On September 9, 1999, after discovery had been completed, Kroger filed a motion for summary judgment against Heinrich. The district court granted the motion on November 24, 1999. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment. *See, e.g.,* *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir.2000). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B. The district court did not err in granting Kroger's motion for summary judgment on Heinrich's negligence claim

■ Because jurisdiction in the district court was based on diversity of citizenship, we must look to Kentucky law to evaluate the merits of Heinrich's claim. *See Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). To successfully pursue a negligence claim under Kentucky law, a plaintiff must prove the following three elements: (1) a legal duty owed to the plaintiff by the defendant, (2) a breach of that legal duty by the defendant, and (3) an injury proximately caused by the breach. *See Rich ex rel. Rich v. Kentucky Country Day, Inc.,* 793 S.W.2d 832, 834 (Ky.Ct.App.1990).

■ Because Heinrich was a customer visiting Kroger for the purpose of doing business with the store, she was an invitee.

*See Rojo v. Drifmeyer,* 357 S.W.2d 33, 34–35 (Ky.1962). The rule is well-established in Kentucky that operators of stores like Kroger "must exercise reasonable care to make their premises reasonably safe" for invitees. *Bosler v. Steiden Stores,* 297 Ky. 17, 178 S.W.2d 839, 840 (1944). Thus, to succeed on her negligence cause of action, Heinrich must prove that Kroger breached its duty of reasonable care. *See Jones v. Jarvis,* 437 S.W.2d 189, 190 (Ky.1969) (declining to apply a rule of strict liability to slip and fall cases); *see also M & T Chemicals, Inc. v. Westrick,* 525 S.W.2d 740, 741 (Ky.1974) (declaring that the absence of any one of the three requisite elements of a negligence claim is "fatal" to that claim).

■ Kentucky divides cases involving a breach of duty to invitees into two types: those in which the condition that caused the injury is traceable to the landowner or land possessor and those where it is not. *See Cumberland College v. Gaines,* 432 S.W.2d 650, 652 (Ky.1968). In cases where there is sufficient proof to conclude that the condition was created by the landowner or possessor, a plaintiff does not need to show that the defendant knew of the danger. *Id.* Where there is insufficient proof that the condition was created as a result of the defendant's actions, however, a plaintiff must show that the landowner or possessor was either actually or constructively notified of the condition. *Id.* In order to determine whether or not a material issue of fact exists sufficient to submit this case to a jury, we must apply this distinction to Heinrich's cause of action.

1. *The district court was correct in finding insufficient evidence to reach the jury on whether the grape was on the floor as a result of Kroger's actions*

■ To avoid the requirement of proving that Kroger was on notice of the grape's presence on the floor, Heinrich must show that the condition was created by Kroger. Heinrich hypothesizes that the change to "unsealed" grape storage bags was the cause of the grape falling to the floor and, further, that the use of these new bags was negligent. She then claims that because there were no other customers in the vicinity of the grape prior to the fall, Kroger's allegedly negligent grape-storage system is the only possible cause of the condition.

There are several problems with Heinrich's argument. To start with, her proof that the grape fell to the floor as a result of these new bags is little more than conjecture. Even when a grocery store stacks fruit and produce in such a manner that it has the potential to fall to the floor, a plaintiff must still show that any debris that actually falls to the floor does so because of the stacking, not because of another customer's carelessness. *See Jellison v. Kroger Co.,* 290 F.2d 183, 184 (6th Cir.1961) (holding, under Kentucky law, that a store is not liable when it is as likely that debris on the floor was due to store carelessness as it was to customer carelessness). But Heinrich offered no proof that the number of grapes falling to the floor had increased as a result of the change in storage bags, nor has she even shown that the "unsealed" bags were in fact being used on the day of the accident. Indeed, when asked if she knew how the grape fell to the floor, Heinrich responded "I don't know."

Despite this lack of proof regarding the cause of the grape's fall to the floor, Heinrich argues that because no other customers were seen in the area between Veatch's inspection and her slip and fall, the only possible cause of the condition was Kroger's negligence in storing the grapes. The only evidence supporting

such an inference, however, is the testimony of Oliver that she saw no other customers around the site at the moment that Heinrich fell. But when asked about the interval just prior to the accident, neither Oliver nor any other Kroger employee knew if any customers had passed through the area. Thus, even if Kroger had negligently packaged its grapes that day, there is simply no proof sufficient to eliminate the possibility that a customer walking through the perimeter aisle did not carelessly drop the grape where Heinrich was about to step.

Because of this lack of evidence, there is simply no way, other than by speculation, that a finder of fact could determine whether the grape's presence on the floor was a result of customer carelessness or Kroger's actions. In cases like this, where "it is as likely that [the produce] fell to the floor as a result of a customer's handling or examining, or sampling, or sorting through the [produce] to find exactly what he wanted, ... the company would not be liable." *Jellison v. Kroger Co.*, 290 F.2d 183, 184 (6th Cir.1961) (finding a grocery store not liable for negligence under Kentucky law). We conclude that the district court correctly applied this rule in finding that there was insufficient evidence to go to the jury on the question of whether the grape fell to the floor as a result of Kroger's actions.

*2. The district court was correct in finding insufficient evidence to reach the jury on whether Kroger had notice of the grape on the floor*

In the absence of proof that the dangerous condition was created by an agent of Kroger, Heinrich must show that Kroger knew or should have known of the grape's presence on the floor in order to establish liability. *See Kroger Grocery & Baking Co. v. Spillman*, 279 Ky. 366, 130 S.W.2d 786, 787 (Ky.1939). Without placing such a burden on the plaintiff, Kroger would become strictly liable to each of its customers for their injuries on the premises. *See id.* (stating the rule in Kentucky that a shopkeeper is not an insurer of its patrons). Notice may be actual or constructive under Kentucky law. *See Ferrell v. Hellems*, 408 S.W.2d 459, 463 (Ky.1966).

Because Heinrich had no evidence that an employee was actually aware of the grape on the floor, she must show that Kroger, in the exercise of reasonable care, should have known of the condition. *See id.* If Heinrich could show, for example, that in the implementation of a reasonable floor-cleaning policy, a Kroger employee should have discovered and remedied the dangerous condition, then a finder of fact could reasonably determine that the store's duty of care was breached. *See Cumberland College v. Gaines*, 432 S.W.2d 650, 652 (Ky.1968) (holding that in a situation where the condition is not traceable to the defendant, "it is necessary to introduce sufficient proof ... that the condition existed a sufficient length of time prior to injury so that in the exercise of ordinary care, the possessor could have discovered it").

Fundamental to her claim of constructive notice under Kentucky law, therefore, is the requirement that Heinrich prove how long the grape was on the floor. *See Bosler v. Steiden Stores*, 297 Ky. 17, 178 S.W.2d 839, 841 (1944) ("We have found no case ... where the court held ... that there should be a submission of the issue of defendant's negligence to the jury when there was no proof ... of the length of time that the complained of debris ... had remained on the floor."). The longer the grape was on the floor, the less reasonable it was for Kroger not to have discovered the condition in the exercise of ordinary care. Evidence supporting a determina-

tion of the length of time a condition existed may be direct or circumstantial. *See Cumberland College,* 432 S.W.2d at 652. Heinrich, however, had no idea how long the grape was on the floor, nor did she elicit any testimony or circumstantial evidence that would allow a jury to infer this key fact.

The testimony of Veatch indicates that he was in the same area of the store two minutes prior to the fall. He testified to the following: "I know the grape wasn't there when I walked past that aisle, because I picked up two coupons off the floor." Heinrich has offered no evidence to contradict this testimony. *See Stump v. Wal–Mart Stores, Inc.,* 946 F.Supp. 492, 494 (E.D.Ky.1996), *aff'd,* No. 95–5220, 1996 WL 683493 (6th Cir. Nov. 22, 1996) (unpublished table decision) (holding, under Kentucky law, that the uncontradicted testimony of a Wal–Mart agent that he had recently inspected the area where an accident occurred supported the grant of summary judgment for the defendant). As in *Stump,* Heinrich produced no evidence to indicate that Veatch's testimony should be disbelieved.

Heinrich suggests that the holding in *Smith v. Wal–Mart Stores, Inc.,* 6 S.W.3d 829 (Ky.1999), minimizes the damaging effect of Veatch's testimony. The plaintiff in *Smith* slipped on a blue liquid that turned out to be the melted remains of a semi-frozen "Icee" drink. Smith, like Heinrich, was unable to produce direct evidence suggesting the length of time the slippery condition had existed. Nevertheless, the Kentucky Supreme Court permitted the trier of fact to infer the length of time the liquid was on the floor based on the circumstantial evidence of the condition itself. Because the blue liquid was originally in a semi-frozen state, the fact that Smith slipped on it in a melted form allowed the

court to infer that the drink had been on the floor long enough to melt. *Id.* at 831.

Heinrich has not produced any similar factual support for this inference to apply to her cause of action. There is no evidence suggesting that the grape had begun to rot, or that it possessed any characteristic that would allow the jury to infer the length of time that it had been on the floor. If we were to permit this case to go to the jury simply because the condition existed, it would undermine Heinrich's obligation to prove that the grape had been on the floor for an unreasonable length of time. Because *Smith* reaffirms this requirement of Kentucky tort law, we cannot apply the inference in the absence of any circumstantial evidence to support it. *See id.* at 831 (Cooper, J., concurring) (expressing regret that the Kentucky Supreme Court did not eliminate the "daunting burden of proving how long the substance/object had been on the floor before the accident").

In addition to there being insufficient evidence to support a finding of actual or constructive notice, Heinrich has failed to contradict the evidence proffered by Kroger that its floors were reasonably maintained. Kroger's policies requiring hourly inspections, frequent floor cleanings, and placing responsibility for floor cleanliness on all employees suggests that Kroger diligently maintained the floor of the Alexandria Drive location. *See Jellison v. Kroger Co.,* 290 F.2d 183, 185 (6th Cir.1961) (allowing almost identical evidence of store policy and a recent inspection to "absolve" the defendant of negligence). Although Heinrich points out that Kroger's policy of hourly sweeping was not strictly followed on the day in question, the floor was still swept at least every two hours, the managers diligently pursued their hourly inspections, and Veatch had inspected the very

area where the fall occurred only two minutes prior to the accident.

## III.   CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.